CHESAPEAKE AND OHIO RAILROAD COMPANY *v.* VIRGINIA.

1. The charter of the Chesapeake and Ohio Railroad Company does not exempt from taxation that portion of the road of the company between Richmond and Covington.

2. A railroad corporation, formed, under an act of the legislature, by the consolidation of existing companies, and "vested with all the rights, privileges, franchises, and property which may have been vested in either company prior to the act of consolidation," acquires no greater immunity from taxation than they severally enjoyed as to the portions of the road which belonged to them under their respective charters. Whatever property was subject to taxation would, after the consolidation, remain so.

ERROR to the Supreme Court of Appeals of the State of Virginia.

The Chesapeake and Ohio Railroad Company was incorporated in the year 1868, by the action of joint commissioners of Virginia and West Virginia, in pursuance of the legislation of those States. The object of the incorporation was to construct a railroad from Covington in Virginia, through their territory, to the Ohio River. The Virginia Central Railroad Company was then operating a continuous line from Richmond to Covington, composed of the Blue Ridge road and of its own road, running westward until it connected with that road, which was the property of the State, and so used by arrangement with the State.

The extension of railroad communication between Covington and the Ohio River, through territory then all her own, had been some time before undertaken by Virginia, and a large amount of money and labor expended on the enterprise by the State Board of Public Works, operating as a corporation styled the Covington and Ohio Railroad Company; but the work had been arrested by the war in 1861.

Subsequently, West Virginia was taken from Virginia by a line which cuts the proposed route some sixteen miles west of Covington, leaving within the limits of Virginia about two hundred and eight miles of completed road from Richmond to Covington, and about sixteen miles beyond Covington, over which the road was yet to be constructed. The distance from Covington to the Ohio, over which the road was to be carried, is about two hundred and fifteen miles.

After the separation, Virginia passed an act, approved Feb. 26, 1866, by which any responsible capitalists, who would accept the benefits of the charter thereby created, and become organized according to its terms, should constitute a corporation under the same style of the Covington and Ohio Railroad Company. When fully organized, the company was to have " all the rights, interests, and privileges of whatever kind, in and to the Covington and Ohio Railroad, and appurtenances thereto belonging, now the property of the State, upon condition that it shall, within six months after its incorporation, as provided in the tenth section of this act, commence, and within six years complete, equip, and operate a railroad, from some point at or near Covington in Alleghany County, Virginia, and connecting with the Virginia Central Railroad, by the way of the White Sulphur Springs and the valleys of Greenbrier River, New River, and Kanawha River, to a point at or near the mouth of Scary Creek, and thence to the Ohio River."   " But this grant is not intended to include the unexpended amount appropriated by the State of Virginia to this work."

It further provides, " that the rates of charge by said company for passengers and freight transported on the main line and branches shall never exceed the highest allowed by law to other railroads in the State of Virginia, and no discrimination shall be made in such charges against any connecting railroad

or canal company in which the State has an interest, and no taxation upon the property of the said company shall be imposed by the State until the profits of the company shall amount to ten per cent a year on its capital."

Commissioners were appointed by the act (and, if a like number should be appointed by West Virginia, the whole were to act in conjunction), " to offer the benefits of the charter for the acceptance of capitalists, to insure the speediest and best construction, equipment, and operation of said railroad. To this end they are hereby empowered to make a contract with any parties who shall give the best terms and the most satisfactory assurances of capacity and responsibility, and to introduce into the said contract such additional stipulations for the benefit of the State, and in furtherance of the purposes herein declared, and not inconsistent with this act; which said contract shall be, to all intents and purposes, as much a part of this charter as if the same had been herein included at the time of the passage of this act." Virginia Session Acts, 1865–66, p. 317.

This act was, March 1, 1866, met by corresponding legislation on the part of West Virginia, and the benefits of the charter were offered to capitalists by the joint commissioners of the States, but not accepted; and no company was ever organized as contemplated under the authority of the laws so passed.

Afterwards laws were passed by the States for the further encouragement of the enterprise, by which the Covington and Ohio Railroad Company, when organized under the preceding acts, was authorized to consolidate with the Virginia Central Railroad Company, and other companies named (all or either of them), upon terms to be agreed upon between them. The companies thus consolidated were to constitute one corporation, to be vested with all the rights, privileges, and franchises, and property which may have been vested in either company prior to the act of consolidation, the new corporation to be known as " The Chesapeake and Ohio Railroad Company." The new company was further authorized, within two years after its organization, to purchase the stock held by the State in the company, and also the right of the State in the Blue Ridge Railroad. Further, it was provided, that " The Virginia Central Railroad Company may contract with the Covington and

Ohio railroad commissioners for the construction of the railroad from Covington to the Ohio River; and, in the event such contract be made, the said Virginia Central Railroad Company shall be known as the Chesapeake and Ohio Railroad Company, and shall be entitled to all the benefits of the charter of the Covington and Ohio Railroad Company, and to all the rights, interests, and privileges which by this act are conferred upon the Chesapeake and Ohio Railroad Company when organized." Acts of Virginia, 1866–67, p. 705.

The contract thus authorized to be made between the joint commissioners and the Virginia Central Railroad Company, was made by them on the 31st August, 1868; and it is a conceded fact, that the exemption from taxation provided for in the acts hereinbefore referred to was held out to the Virginia Central Railroad Company by the commissioners appointed by said acts as one of the inducements to the company to unite in the contract with them for the construction of the railroad from Covington to the Ohio River, it being supposed by said commissioners and the Virginia Central Railroad Company that such exemption would apply to the whole line from Richmond to the Ohio River.

Under this contract the Chesapeake and Ohio Railroad Company was duly organized. It took the interest of the State in her uncompleted work on the line west of Covington, and constructed and equipped a railroad thence to the Ohio River, according to its charter; and, within two years after its organization, purchased the Blue Ridge Railroad from the State, and has ever since operated a continuous line of road from Richmond to the Ohio River.

The profits of the company have never amounted to ten per cent per annum on its capital.

Certain proceedings, under the assessment and tax acts of Virginia, were instituted in the Circuit Court of the City of Richmond, against the company, for failing to report to the auditor of public accounts, on the first day of February, 1871, the estimated value of its real and personal property of every description; and for failing, also, to report quarterly, on the first day of February, May, August, and November, of that year, the net earnings of the road for the preceding three months;

and for failing to pay the taxes imposed thereon by law into the treasury at the time fixed for making said report.

The company contended that those acts did not apply to it; and, if they did, that they were in violation of the tenth section of the first article of the Constitution of the United States, as by the charter no taxation was to be imposed upon its property until its profits should amount to ten per cent a year upon its capital. The court sustained the claim of exemption set up by the company, and dismissed the proceedings. The judgments of that court were reversed by the Supreme Court of Appeals of the State of Virginia; whereupon the company brought the cases here.

*Mr. William M. Evarts* and *Mr. William J. Robertson* for the plaintiff in error.

*Mr. R. T. Daniel*, Attorney-General of Virginia, *contra*.

MR. JUSTICE STRONG delivered the opinion of the court.

Each of these cases presents the same question. That a contract for some exemption from taxation was made by a legislative offer of the State, and an acceptance of the offer by the company, is not controverted; but the extent of the exemption is the matter in question between the parties. To ascertain what that was, it is necessary to review the legislative acts which made the offer accepted by the company. Preparatory to such an examination, it may be well, also, to notice some antecedent facts stated in the record.

On the fifteenth day of February, 1853, an act of the legislature of Virginia was passed, authorizing the board of public works of that State to construct a railroad from Covington to the Ohio River, on State account, under which act the construction was commenced and prosecuted by means of State appropriations, made from time to time, until the work was arrested by the late civil war. The completion of the road, however, was deemed an object of great importance to the people of Virginia, and on the 26th of February, 1866, an act was passed, entitled " An Act to incorporate the Covington and Ohio Railroad Company," the provisions of which we shall presently notice. The State having then been divided, the legislature of West Virginia, to which State the road was deemed equally

important, a few days afterwards passed a similar act, also en
titled " An Act to incorporate the Covington and Ohio Rail
road Company." The object of both these statutes was the
completion of the same road by one and the same corporation.
The act of Virginia declared that the persons upon whom the
benefits of the charter might thereafter be conferred, and who
might be organized as thereinafter provided, should thereupon
be constituted a corporation, under the name of " The Coving-
ton and Ohio Railroad Company," and should have all the
rights, interests, and privileges in and to the Covington and
Ohio Railroad, and its appurtenances, then belonging to the
State of Virginia, on certain conditions, not now necessary to
be noted. By the seventh section of the act, the State reserved
a right to connect, at any point within its limits, with the rail-
road of the said company, or any of its branches, any canal or
railroad in which the State had an interest ; and the section de-
clared that " no taxation upon the property of said company
shall be imposed by the State until the profits of the company
shall amount to ten per cent a year on its capital." The
ninth section appointed five commissioners, to act in conjunc-
tion with an equal number who might be appointed by West
Virginia, whose duty it was made to offer the benefits of the
charter to capitalists, so as to secure the speediest and best con-
struction, equipment, and operation of the railroad. To this
end they were empowered to contract with any parties, and to
introduce into the contract any additional stipulations for the
benefit of the State, in furtherance of the purposes declared,
and not inconsistent with the act. And it was further enacted,
that such contract should be to all intents and purposes as
much a part of the charter as if it had been included in the
act at the time of its passage.

The act of Feb. 26, 1866, proved ineffectual. The Coving-
ton and Ohio Railroad Company was not formed. The com-
missioners were unable to find parties able and willing to
accept the charter, and contract with them on the terms pro-
posed by it. Accordingly, on the 26th of February, 1867, the
legislature of West Virginia, and on the 1st of March, 1867,
the legislature of Virginia, each passed another act, entitled
An Act to provide for the completion of a line or lines of rail-

road from the waters of the Chesapeake to the Ohio River." The two acts were of like import. That of Virginia, as well as that of West Virginia, held forth two alternative propositions. The first was, that the Covington and Ohio Railroad Company, which might be organized under the first act, might consolidate with the Virginia Central Railroad Company, the South-Side Railroad Company, and the Norfolk and Petersburg Railroad Company, or with one or more of them; the consolidated companies constituting one corporation, to be known as the Chesapeake and Ohio Railroad Company, and to have a capital not exceeding $30,000,000. The act also contained some new provisions respecting the organization of the Covington and Ohio company. The second section gave to the consolidated company, in case consolidation should be effected, all the rights, privileges, and franchises and property which might have vested in either company prior to the act of consolidation. The fourteenth section authorized the new, the consolidated company, to purchase stocks held by the State, to pay debts due to the State from either of the companies named, and to purchase the Blue Ridge Railroad, belonging to the State, by the surrender of State bonds equal in amount to the stocks purchased, the debts paid, and the valuation of the Blue Ridge Railroad, respectively. Such was the first alternative proposition.

The second was made to the Virginia Central Railroad Company alone, and it was made in the fifteenth section of the act, which is as follows : —

"The Virginia Central Railroad Company may contract with the Covington and Ohio Railroad commissioners, for the construction of the railroad from Covington to the Ohio River; and, in the event such contract is made, the said Virginia Central Railroad Company shall be known as the Chesapeake and Ohio Railroad Company, and shall be entitled to all the benefits of the charter of the Covington and Ohio Railroad, and to all the rights, interests, and privileges which by this act are conferred upon the Chesapeake and Ohio Railroad Company when organized."

No such consolidation as that proposed by this statute ever took place. It was impossible, because the Covington and Ohio Railroad Company never came into existence. But the second alternative proposed was accepted. The Virginia Central did

enter into a contract with the railroad commissioners, as author-
ized by the fifteenth section, and thus became the Chesapeake
and Ohio Railroad Company. By the contract, it undertook to
construct the unfinished railroad; and the commissioners, on
behalf of the State, engaged that it should be "entitled to all
the benefits of the charter of the Covington and Ohio Railroad,
and to all the rights, interests, and privileges, which, by the
statute aforesaid, were conferred upon the Chesapeake and
Ohio Railroad Company when organized." The statutes re-
ferred to were those passed by the legislatures of Virginia and
West Virginia in 1866 and 1867, which we have mentioned.

Thus the contract between the State and the company was
formed, and such were its terms. The question now is, How
far did the contract exempt the property of the Virginia Cen-
tral (now the Chesapeake and Ohio) Company from taxation,
or rather what property did it exempt?

This is to be answered in view of the statute alone. The
contract with the railroad commissioners made no attempt to
confer upon the company any greater or other rights, privileges,
or immunities than those described in the statutes. By virtue
of it, the company obtained two classes of rights: First, the
benefits which the act of Feb. 26, 1866, amended by the act of
1867, would have conferred upon the Covington and Ohio Rail-
road Company had it been formed; and, second, the rights,
interests, and privileges of the corporation contemplated by the
first alternative proposition — namely, the corporation formed
by consolidation of the companies mentioned — would have
possessed had such consolidation been made. What, then, were
those rights, benefits, interests, and privileges? The Covington
and Ohio Company, had it been formed, would have been ex-
empt from all State taxation of its property; but its charter
gave exemption to no other property. Had a consolidation
taken place between it and the Virginia Central, and had the
two companies become one corporation, together owning the
property of both, that portion of the property brought by
the Covington and Ohio into the aggregate would have con-
tinued exempt. But exemption of other property was not con-
templated by the charter. So much is settled by repeated
decisions of this court. *Philadelphia, Wilmington, & Baltimore*

*Railroad Co.* v. *Maryland,* 10 How. 377; *The Delaware Railroad Tax Case,* 18 Wall. 206; *Tomlinson* v. *Branch,* 15 Wall. 460; *Central Railroad and Banking Co.* v. *Georgia,* 92 U. S. 665. In most, if not in all, of these cases the statutes which authorized the consolidation or union of the companies declared that the consolidated or united companies should possess all the rights and privileges which each of the companies enjoyed under its charter. Yet, it was ruled that those rights and privileges did not extend beyond that portion of the aggregated property which each had held under its charter.

There was no express provision in either of the statutes that the property of the Virginia Central shall, in any contingency, be exempt from taxation, and certainly, in our opinion, nothing they contain raises an implication of such an exemption. What was exempted was that which the legislature provided might be the property of another company. The right or immunity of that company was a limited right or immunity, and the Virginia Central, when it acquired it, took it with its limitations.

Nor was there any thing in the grant to the Virginia Central, made by the contract under the fifteenth section of the act of 1867, of all the rights, interests, and privileges which by that act were conferred upon the Chesapeake and Ohio Railroad Company when organized (that is, upon the Chesapeake and Ohio, if such a company should be formed by consolidation), from which can be inferred an exemption from taxation of any thing except what would have been brought into the common stock, if the proposed Covington and Ohio Company had been organized, and had become a party to the consolidation. The consolidated corporation would have acquired, as we have seen, no greater immunities from taxation than the constituent companies had prior to the union, and would have held them distributively; that is to say, whatever privileges and advantages either of them possessed would have been held by the new company to the extent of the road occupied by each respectively upon the consolidation. It would have stood in their place, and have possessed the powers, rights, privileges, and immunities the constituent companies had severally enjoyed in the portions of the road which had previously belonged to them.

If it be asked, why, then, were the rights of the consolidated

Chesapeake and Ohio conferred upon the Virginia Central, if they were only such as the Covington and Ohio had, — those rights having been granted by the other provision of the statute and of the contract, — the answer is at hand.  By the fourteenth section of the act, other rights were promised to the consolidated corporation when organized.  We have already called attention to them.  Among them was the right to pay the debts of the several companies, and buy the State stock therein with State bonds, and the right to buy the Blue Ridge Railroad; and thus acquire a continuous line of railroad from Richmond to the Ohio River.  All these rights passed to the Virginia Central; but none of them had any reference to exemption from liability to taxation of any property other than that which would have belonged to the Covington and Ohio Railroad Company had it come into existence.

No doubt the extension of a railroad from Covington to the Ohio River was a favorite project of the State; and it was intended to offer terms which, it was supposed, would induce the Virginia Central Company to undertake its construction; but what the terms were must be gathered from the acts of the legislature, and from the contract with the railroad commissioners.

In the agreed statement of facts, it appears that the exemption from taxation provided for in the statutes was held out to the Virginia Central by the railroad commissioners, as one of the inducements to enter into the contract to construct the road, it being supposed by the commissioners and by the company that the exemption covered the whole line from Richmond to the Ohio River.  This fact, however, can be of no importance to the decision we feel constrained to make.  No such stipulation was inserted in the contract; and even if such a representation was made to the company, it was but the expression of an opinion respecting the meaning of a statute, in regard to which the company had the same knowledge that the commissioners had.

It will be seen from what we have said, that, in our opinion, the Court of Appeals of Virginia construed the acts of 1866 and 1867 correctly, and that no attempt has been made to impair the obligation of a contract. ·              *Judgment affirmed.*