JAMES H. WILSON, Receiver, etc., *v.* JAMES L. GAINES and others.

October Term, 1877.

EXEMPTION FROM TAXATION IN ONE CHARTER WILL NOT PASS BY THE GRANT OF ITS RIGHTS AND PRIVILEGES TO ANOTHER. — In this state, where the Constitution makes a distinction between rights and privileges, and immunities and exemptions, the legislative grant to one railroad company of all the "rights, powers, and privileges" conferred upon another company by the act incorporating it will not carry an exemption from taxation included in the latter act.

EXEMPTION FROM TAXATION PERSONAL, AND NOT TRANSMITTED BY SALE. — The sale of a railroad, together with all its property and franchises, will not carry an exemption from taxation contained in its charter, unless authorized by legislative act.

*Demoss*, for complainant.
*Heiskell*, for defendants.

THE CHANCELLOR : — The complainant, as receiver of the St. Louis and South-Eastern Railroad, by appointment of the Circuit Court of the United States at Nashville, has filed this bill against the comptroller of the state and the railroad-tax assessors, to set up an alleged exemption of that company from taxation under the acts of 1875 and 1877, pro-

viding for the taxation of railroads. The defendants have demurred, the main cause of demurrer assigned being that the bill does not disclose such a state of facts as entitles the complainant to the exemption claimed.

That part of the St. Louis and South-Eastern Railroad which lies in the state of Tennessee, the construction having been completed in 1859, was built by the Edgefield and Kentucky Railroad Company, a corporation chartered by an act of the General Assembly of February 13, 1852. By the sixth section of the charter, the company was invested, "for the purpose of making and using said road," with "all the powers, rights, and privileges," and subjected to all the liabilities and restrictions, that are conferred and imposed upon the Nashville and Chattanooga Railroad Company by an act passed on December 11, 1845. The thirty-eighth section of this last-named act is thus worded: "The capital stock of said company shall be forever exempt from taxation, and the road, with all its fixtures and appurtenances, including workshops, warehouses, and vehicles of transportation, shall be exempt from taxation for the period of twenty years from the completion of the road, and no longer." It is not seriously contended that the sixth section of the act incorporating the Edgefield and Kentucky Railroad Company carries this exemption into the charter of the company, for it is seen at once that the qualifying words, "for the purpose of making and using said road," limit the "powers, rights, and privileges" to such as are essential to the building and running of the road, and that exemption from taxation is not essential for these purposes. But by an act passed on December 15, 1855, the charter of the Edgefield and Kentucky Railroad Company was amended by providing that said company should be entitled "to all the rights and privileges" that were conferred upon the Nashville and Southern Railroad Company by the act of 1852, incorporating it. This act provides that "said company shall have and enjoy all the rights, powers, and privileges, and be subject to all the

liabilities and restrictions prescribed in the charter of the Nashville and Chattanooga Railroad Company." Here, the "rights, powers, and privileges" are not limited by any qualifying words; neither are the "rights and privileges" conferred upon the Edgefield and Kentucky Railroad Company by the amendment of its charter. The argument is, that the latter company obtained indirectly, by this circuity, what it ·did not secure directly by its original charter, namely, the exemptions from taxation of the thirty-eighth section of the act incorporating the Nashville and Chattanooga Railroad Company.

The reply of the defendants to this argument is, that it cannot be supposed that the Legislature intended to give by indirection what it had refused directly, and that there are other "rights and privileges" of the Nashville and Southern Company which were designed to be conferred, and which satisfy the words used without resorting to the exemption clause. If the original charter had plainly evidenced on its face a legislative intent to exclude the right of exemption, and to subject the company to taxation, the reply would be conclusive. For, a claim of exemption from taxation cannot be supported unless the statute is so plain as to leave no room for controversy, a reasonable doubt being always resolvable in favor of the state. *Delaware Railroad-Tax,* 18 Wall. 225 ; *North Missouri R. Co.* v. *Maguire,* 20 Wall. 61 ; *Bailey* v. *Magwire,* 22 Wall. 226 ; *Central R. Co.* v. *Georgia,* 92 U. S. 674. If the original charter had granted all the rights and privileges of the Nashville and Chattanooga Railroad Company, except those of the thirty-eighth section, no subsequent grant of those rights and privileges by indirection could be allowed to go further. There is, however, no such positive declaration of intent, and no such plain indication in the language used, as to exclude a different conclusion. It is not improbable that the sixth section of the original charter was inadvertently so worded as to cut off the exemption which it was designed to confer.

And, at any rate, there is not enough on the face of these acts to deprive the Edgefield and Kentucky Railroad Company of any of the "rights and privileges" conferred on the Nashville and Southern Company. In this view, the question for consideration is, whether a grant to one railroad company of "all the rights and privileges" conferred by its charter on another railroad company carries, when "fairly interpreted," an exemption from taxation.

We start out with the postulate, as we have seen, that there can be no presumption in favor of the relinquishment of the power to tax. Any doubt must be solved in favor of the state. "It is manifest," says Mr. Justice Davis, "that legislation which it is claimed relieves any species of property from its due proportion of the general burdens of government should be so clear that there can be neither reasonable doubt nor controversy about its terms." *Bailey* v. *Magwire*, 22 Wall. 226. An exemption is certainly a privilege, in one sense, and the word "privilege" may be so used as plainly or fairly to cover exemption from taxation. It was so held by the Supreme Court of the United States in *Humphrey* v. *Pegues*, 16 Wall. 244. And it has been so repeatedly taken for granted by that court, and by counsel in argument in other cases. *Chesapeake & Ohio R. Co.* v. *Virginia*, 94 U. S. 718, and authorities there cited. Where the grant is general, without qualification, and the word has not acquired a different meaning, or has not been limited by constitutional, legislative, or judicial usage, immunity from taxation may fall within "all privileges." But the word privilege does not technically, necessarily, or as matter of law include such immunity. It rather implies some of those positive rights and privileges which are essential to the operations of the corporation, such as the right to condemn land, to take gravel, rock, or soil for the road-bed, to charge toll, and the like,— in fine, such rights and privileges as go to make up the franchise of the corporation. "Immunity from taxation," to use the words of Mr. Justice Field, in his

masterly opinion in *Morgan* v. *Louisiana*, 93 U. S. 223, "is not one of them." It is, after all, a question of legislative intent in what sense it has been used. That sense may be enlarged beyond its ordinary signification, or restricted within even narrower limits, by the context, by the circumstances, or by usage. If the question were entirely open for my decision, I should have grave doubts as to the proper construction which ought to be given to it in this state, and in this instance. But the Supreme Court of the state has relieved me from the necessity of exercising my own judgment. That court held in two cases, as I understand, one of which is before me, where there was a direct grant of the "rights, powers, and privileges" of one railroad company to another, by reference to the charter of the former, that the grant does not carry the immunity of taxation conceded by that charter. The decision is put upon the ground that, in this state, the word "privilege" alone, or the words "rights, powers, and privileges," will not, *ex vi terminorum*, include immunity from taxation. There must be something more than the mere use of the word, or words, to deprive the state of so vital a right as the levying of taxes. Stress is laid, in the reasoning by which this conclusion is reached, upon the fact that our own Constitution draws a distinction between the words "rights and privileges" and the words "immunities and exemptions." By article 11, section 8, of the Constitution of 1834, repeated in the Constitution of 1870, the Legislature is forbidden to pass "any law granting to any individual, or individuals, *rights, privileges, immunities, or exemptions* other than such as may be, by the same law, extended to any member of the community who may be able to bring himself within the provisions of such law." *East Tennessee & Virginia R. Co.* v. *Hamblen County*, MS. opinion of Supreme Court, at Knoxville, September term, 1877. My duty is, plainly, to follow this ruling.

Another obstacle lies in the complainant's way to the relief sought. The Edgefield and Kentucky Railroad Com-

pany received aid from the state, in the shape of state bonds secured by a statutory mortgage on the road, its property and franchises. The road, its property, and franchises were sold by decree of this court, upon a bill filed to foreclose the state's lien, under which sale, according to the allegations of the bill, " the road, its franchises, property, rights, privileges, and immunities," passed to the purchaser. These were, at the judicial sale, purchased by the county of Davidson and others, who, says the bill, " subsequently sold the same to the American Contract Company, and it subsequently sold to parties who put it into consolidation with various other railroads, running through the states of Kentucky, Indiana, and Illinois, to form the line of the St. Louis and South-Eastern Railroad." The bill further states that the portion of the line formed by the Edgefield and Kentucky road was conveyed in trust to persons named, to secure creditors; that these trustees have filed a bill in the Federal court at Nashville, for the purpose, among other things, of placing the road in the hands of a receiver; that complainant has been appointed receiver, and qualified as such. If it be conceded, as I think it may, under the decision of our Supreme Court in *Knoxville and Ohio Railroad Company* v. *Hicks*, 1 Memphis L. J. 75, that the purchasers at the foreclosure sale, made by a decree of this court, under a special act of the Legislature, acquired any right of exemption from taxation conferred by the charter of the Edgefield and Kentucky Railroad Company, it does not follow that any sub-vendee of those purchasers would acquire the same right. This could only occur by treating the exemption as attached to the property, into whosoever hands it might come, or as constituting a part of the franchise which might be conveyed with the property. But it has never been supposed by any one that an exemption from taxation, of the character of the one under consideration, attached to specific property so as to follow it into the hands of third persons. The fact that the exemption covers vehicles of transportation is conclusive on

this point. The construction, if admissible, would enable a company to which the exemption was granted to stock all the railroads in the state with exempt locomotives, by using them for a time and then disposing of them. And it has been expressly held, and by the highest court in the land, that immunity from taxation is not a franchise of the corporation which would pass as such, without other description, by a transfer of the franchises. A franchise is property, and may be conveyed to a purchaser as part of such property. Immunity from taxation is personal, and incapable of transfer without express statutory direction. *Morgan* v. *Louisiana*, 93 U. S. 223. This doctrine commends itself, not merely because of the high source from which it emanates, but from its inherent good sense. There is nothing in the decision made in the *Knoxville and Ohio Railroad Company* v. *Hicks* in conflict with this doctrine; for the court there held that the decrees of the court, in pursuance of the act of the Législature, were equivalent to a legislative grant. And it may be well enough to add that the Supreme Court of the United States do not say that the exemption cannot pass without a " new legislative grant." What is required, according to their decisions, to transfer the exemption, is " express statutory direction." Legislative authority to sell, consolidate, or merge roads, with all " rights and privileges," is sufficient, if the language used is such as to make it clear that the Legislature intended the exemption to pass. *Philadelphia, etc., R. Co.* v. *Maryland*, 10 How. 376; *Tomlinson* v. *Branch*, 15 Wall. 460; *Chesapeake & Ohio R. Co.* v. *Virginia*, 94 U. S. 718. But legislative authority to make the sale so as to carry the immunity, which is neither attached to the property nor a part of the franchise, is indispensable. The bill does not show or claim the existence of any such authority for the subsequent sales and transfers by the county of Davidson, and other vendees under her.

The demurrer must be sustained, and the bill dismissed with costs.