Smith vs. Smith.

No. 10,828.

Mrs. Jessica K. Smith vs. Mrs. E. P. Smith, Guardian, etc.

1. Although the law fixes the domicil of the wife as being that of the husband, universal jurisprudence recognizes an exception in a case where the husband's conduct has been such as to furnish lawful ground for a divorce, and which justifies her in leaving him, and necessarily authorizes her to live elsewhere and acquire a separate domicil.

2. If a wife who had been married in Maine, on discovering proofs of her husband's adultery, leaves him and returns to her former home in Maine, and establishes there a bona fide domicil, her marriage status becomes subject to the jurisdiction of that domicil, where courts may lawfully entertain her action of divorce.

3. If the defendant in such action have had actual or constructive notice in accordance with the statutory provision of the State, the divorce will be held valid as to both parties, by comity, in such States as have adopted the policy of such divorce proceedings by similar legislation.

4. Article 142 of the Civil Code of Louisiana is strikingly similar to the statute of Maine, in authorizing the wife who was married in the State to return thereto, and, on re-establishing her domicil, to obtain divorce from her non-resident husband, who has given her lawful cause therefor. This authorizes the courts of either State to give effect to such divorces granted in the courts of the other in such cases.

5. In such cases, however, bona fide residence or domicil is an essential prerequisite to jurisdiction, and the decree is not conclusive on jurisdictional facts, and the absence of jurisdiction for want of bona fide residence may be shown in any court.

6. This court will not recognize the validity of such foreign divorces where the husband has maintained his Louisiana domicil, without full and conclusive proof of the bona fides of the wife's separate domicil.

7.  Without determining its validity *vel non*, the Maine divorce in this case is held to be one, presenting, on its face, no intrinsic nullity, and subject to attack only on proof of intrinsic facts destroying the jurisdiction; and, therefore, entitled to weight in determining the good faith of a second marriage contracted between the husband and a third party.

8.  The sole condition prescribed by the law to give civil effects to a putative marriage is *good faith* on the part of one or both the parties. Such good faith means a belief, both honest and reasonable, that the marriage is valid and in violation of no legal prohibition. The facts in this case satisfy us, beyond doubt, of the good faith of plaintiff.

9.  The law, in attributing to a putative marriage "civil effects," uses those words without restriction, and necessarily means all civil effects given to marriage by the law. Such a marriage, contracted in good faith, produces all the civil effects of a valid marriage, up to the moment when its nullity is judicially pronounced.

10. The right to the marital portion conferred by Article 2382, Rev. C. C., is a *civil effect* of marriage, and arises in favor of the putative, as well as of the legitimate, spouse, when the marriage.has not been annulled during the life of the deceased. Spanish, French and Roman law on the subject referred to.

11. The terms "necessitous circumstances," used in Article 2382, Rev. C. C., are used relatively to the fortune of the deceased, and to the condition in which the claimant lived during the marriage.

APPEAL from the Civil District Court for the Parish of Orleans. *Voorhies, J.*

### Rice & Armstrong for Plaintiff and Appellant:

1.  The Legislature of a State, which was the residence of one or both parties, and where their marriage was celebrated, may prescribe the manner in which suit for divorce may be prosecuted in its courts, though only one of the parties be in, or a resident of, the State where such suit is instituted. Rev. Stat. of Maine, 1871, p. 488, Secs. 2, 4; Rev. C. C. La., Arts. 141, 142, 145; Warren vs. Inhabitants of Warren, 43 Me. 418; Cheever vs. Wilson, 9 Wal., U. S. S. C. 123; 2 Bish. on Mar. and Div. 475; Shouler on Husband and Wife, Sec. 574; Robbins vs. Martin, 43 An., not yet reported; Young vs. Upshur, 42 An. 362, and cases cited; Durrity vs. Husband, 42 An. 357; in Pennoyer vs. Neff, 74 U. S. S. C. 734; Cooley on Const. Lim. 6th Ed., p. 497.

2.  "Substituted service," whether by publication, as provided by law of certain States, or through an attorney appointed by the court, as in Louisiana, or by personal service in a foreign jurisdiction (the purpose being to bring knowledge home to the defendant), is equally efficacious to give jurisdiction, as against an absentee, when the suit is in the nature of a proceeding *in rem*, or to determine the *status* of parties thereto. C. C., Arts., 141, 142 and 145, and cases cited above; Harding vs. Alden, 9 Maine, 140.

3.  The court of one State having jurisdiction, full faith and credit must be given in every other State to the decrees of such court. Const. of U. S., Art. 4, Sec. 1, par. 1.

4. Marriage by parties in good faith produces, in Louisiana, all "civil effects;" if one party only acted in good faith, marriage produces all "civil effects" in his or her favor. C. N., Arts. 201 and 202; C. C., Arts. 117 and 118; and cases cited under No. 5, below.

5. The good faith referred to in the Civil Code is presumed. Hubbell vs. Inkstein, 7 An. 252; Succession of Navarro, 24 An. 298; McCaffrey vs. Benson, 40 An. 13, 14; Clendenning vs. Clendenning, 3 N. S. 438; Suc. of Buissiere, 41 An. 220, 221; Marcadé, Vol. 1, 521, 522; Zacharie, Vol. 3, 244; Marcadé, Vol. 1, p. 524; par. 695, p. 522; Zacharie, Vol. 3, p. 244.

6. Articles 2382, 117 and 118 of the Civil Code are to be construed together; the wife referred to in Article 2382 includes the wife in good faith in Articles 117 and 118; and this irrespective of whether the Spanish law considered or not the putative wife in providing the màrital portion. Duranton, Vol. 1, 322, par. 956; Vol. 2, par. 569, 570; Demolombe, Vol. 14, Sec. 172; See Partidas, Vol. 2, p. 1102; Merlin, Repertoire de Jurisprudence, Vol. 26, p. 176.

7. The "civil effects" of marriage, and hence of a putative marriage, are the right of repetition of dowry, right in the community, and the right of inheritance or succession in favor of children of such marriage and of putative wife. The right to the marital portion is the right of inheritance. Marcadé, Vol. 1, p. 525, par. 696; p. 527. par. 698; Zacharie, Vol. 3, p. 247, note; Duranton, Vol. 1, p. 322, par. 956; Demolombe, Vol. 14, Sec. 172; Duranton, Vol. 2, par. 569, 570; Boileux, Vol 1, p. 491; Partidas, Vol. 2, p. 1102; Abercrombie vs. Caffrey, 3 Mart. 1-4; Suc. of Piffet, 39 An. 561, 562; Connor vs. Connor, 10 An. 450.

8. The term "necessitous circumstances," used in Article 2382, is relative, and as applied to the widow, relates to the conditions of the husband's estate, his manner of living with his family, and "la qualité de son Mari et le rang qu'elle avait tenu avec lui en son vivant." Merlin, Repertoire de Jurisprudence, Vol. 26, p. 177. Dunbar vs. Dunbar, 5 An. 159; Suc. Piffet, 39 An. 561; Suc. Costa, 19 An. 45; Suc. Newman, 27 An. 594; Suc. Fortier, 3 An. 104; Connor vs. Connor, 10 An. 450; Gee vs. Thompson, 11 An. 660.

---

*E. Howard McCaleb*, for Defendant and Appellee:

1. Plaintiff, having married the deceased while his first wife was still living and the first marriage undissolved by a valid divorce, can not claim the marital fourth. The deceased was incapable of contracting a second marriage until after the dissolution of the first. R. C. C., Art. 93.

2. A divorce decree obtained by a Louisiana wife against her husband in the courts of Maine, where he never rèsided, did not appear, and never was legally cited, is an absolute nullity. Under the divorce laws of Maine the courts of that State had no jurisdiction, because the complaining wife did not reside there. Revised Statutes of Maine, Chap. 69, Sec. 2. Residence, as used in this statute, means "home—dwelling place." 58 Me. 210; 43 Me. 406; 120 N. Y. 485.

3. The intention of the wife to acquire a separate domicile for the purpose of obtaining divorce, must be manifested *animo et facto.* 9 Wall. 108. And she must first lose her old domicile before she can acquire a new one; and this takes a voluntary absence of two years from this State. Rev. C. C. 46.

A married woman has no other domicile than that of her husband. Rev. C. C. 120.

Smith vs. Smith.

4.  The libel for divorce does not show affirmatively that the libellant was residing. in Maine at the time the complaint was filed. Secs. 216, 223, Stewart on Marriage. and Divorce.
The city of New Orleans was the married domicile (32 An. ₽06; 40 An. 457), and the acts of adultery set out in the bill are averred to have been committed. here. 1 An. 313.

5.  Service of summons on the defendant (issued by a Maine court) by the civil sheriff of New Orleans, is without any effect or validity. 95 U. S. 727; 45 Hun. 63; 110 U. S. 701.

6.  The courts of Louisiana will not dissolve a marriage between persons domiciled elsewhere, for causes originating there. 9 An. 34; 40 An. 28. The judgment of divorce in this case is an absolute nullity. 46 N. Y. 30; 76 N. Y. 78. Such a divorce has been repudiated in the courts of Maine. 78 Maine, 187. ᐧ Our courts. look with disfavor upon second marriages. 10 An. 466.

7.  The marriage of plaintiff to deceased while his first wife was living (to her knowledge) and their marriage undissolved, was an absolute nullity. 25 An. 519;. 24 An. 485. Plaintiff was not even· in good faith. 39 An. 823. She did not take the precautions commanded by law, to ascertain if any impediments existed to prevent the celebration of their contemplated marriage. Duranton, T. 2, No. 350; Toullier, T. 1, No. 658.

8.  The effects of good faith in putative marriages are confined to three objects,. viz : (1) repetition of dowry; (2) rights upon the community; (3) right of inheritance to children born of this putative marriage. Toullier, T. 1, No. 660. Brt where the marriage is absolutely null and never existed, the question of · good faith does not arise. Laurent, T. 2, No. 515; Zacharie, T. 3, 243, Sec. 460.

9.  The marital fourth allowed by Article 2382, R. C. C., comes from the Spanish law, and was not extended to the putative, but only to the legitimate wife. Partidas, Vol. 2, p. 1102; 39 An. 556. This was also the Roman law in regard to the marital fourth. 53 Novel of Justinian, tit. 8, Chap. 6; 117 Novel of Justinian, tit. 18, Chap. 5; 11 An, 658.

---

The opinion of the court was delivered by

FENNER, J.   The action is brought by plaintiff, as the surviving wife of Alexander Smith, to recover the *marital fourth* of his estate, as provided by Art. 2382 of the Revised Civil Code, which declares: " When the wife has not brought any dowry, or when what she has brought as a dowry is inconsiderable, with respect to the condition of the husband, if either the husband or wife die rich, leaving the survivor in necessitous circumstances, the latter has the right to take out of the succession of the deceased what is called the · *marital portion;* that is, the fourth of the succession in full property, if there be no children, and the same portion in usufruct only,. when there are but three, or a smaller number, of children; and. when there are more than three children, the surviving, whether · husband or wife, shall receive only a child's share in usufruct, and. he is bound to include in this portion what has been left to him as a. legacy by the husband or wife who died first."

Alexander Smith was twice married. He was first married to Elizabeth P. Sewell, in 1870, at her home in Wiscasset, Maine, but he was, at the time, a resident of Louisiana, and immediately after the marriage the pair came to Louisiana and established the conjugal domicil in this city. Here they lived together until June, 1881, and four children, still surviving, were the fruits of their union. At that time, the wife having discovered, as she charges, proofs of the husband's adultery, abandoned the conjugal domicil, and returned to her ane-nuptial home in Wiscasset, Maine. On the 21st of September, 1881, she filed a libel of divorce against her husband, in the Supreme Judicial Court of the county of Lincoln, State of Maine, in the caption of which she describes herself as "Elizabeth P. Smith, of Wiscasset, in the county of Lincoln," and in which she alleges the facts of her marriage, her former domicil, her children by the marriage, and the grounds for divorce. She further alleged that her husband had a large estate, and prayed for a decree granting the divorce, decreeing her entitled to the care and custody of the children, and a reasonable allowance for her own and their maintenance. The court made its order thereon, directing notice to appear on a day fixed, to be served on the libellee, personally, " by any sheriff or deputy sheriff authorized to serve civil process, in the place where the respondent is found." The record further shows that personal service was accordingly made on Alexander Smith in this city, by a deputy sheriff of the parish of Orleans. Smith did not appear, and being held in default, the cause was heard on evidence introduced by the wife, and a decree was entered according to the prayer of libel, including a judgment against Smith for $20,000, as an allowance in lieu of alimony.

Some two weeks after the entry of this decree, Mrs. Smith left Wiscasset and went to Nashville, Tenn., where her children were being educated, remained there until February, 1882, then returned to New Orleans, where she spent six years, and finally removed to New York, where she now resides.

From the date of the above decree of divorce, both parties have lived and acted, and, in all respects, assumed the character of divorced man and wife. On the demand of the wife's attorney, Alexander Smith paid the $20,000 decreed by the judgment. Shortly afterwards he filed a suit in the Civil District Court of this city, entitled Alex. Smith vs. His Divorced Wife, E. P. Smith, in which he

averred the fact of divorce, his payment of the $20,000, the dissolution of the community of acquets and gains thereby, the failure of the wife to accept the community within the prescribed delay, and asked for a decree, declaring his estate to be his separate property and free from any claim growing out of the former community. Mrs. Smith answered, admitting the validity of the divorce, and judgment was rendered as prayed for.

Both parties undoubtedly accepted the decree of divorce as valid, and undoubtedly believed it to be so.

Even after the death of Alexander Smith, in her petition filed in his mortuary proceedings for recognition as guardian of her minor children, she describes herself as his " divorced wife," and in other petitions she describes herself similarly.

The evidence shows that they both assumed the *status* of divorced man and wife; that their most intimate friends and acquaintances regarded them as such, and that there was never in the community the slightest question as to their status.

Under these circumstances, in October, 1889, Alexander Smith married the present plaintiff, Jessica McFarland, a young girl living in his immediate vicinity, and whose mother had long known both Smith and his former wife, and who accepted, without question, the universal belief of the community, based on the actions and declarations of both, that they were divorced.

Smith died in December, 1889.

The first wife, as guardian of her minor children, has had them recognized as heirs of their father, and sent into possession of his estate; and against her, as guardian aforesaid, the present action is brought.

The guardian defends on the ground that the Maine decree of divorce was absolutely null and void for want of jurisdiction *ratione personæ* and *ratione materiæ;* that, consequently, plaintiff's marriage was illegal and null, that she is not the surviving wife of Alex. Smith, and has no rights, as such, upon his estate; and, further, denies that she is in necessitous circumstances.

The case presents the following questions, viz.:

1. Was the Maine decree of divorce valid?

2. If invalid, was the subsequent marriage of plaintiff contracted in good faith, and entitled to produce its civil effects?

3. If the marriage produced the civil effects, is the claim to the marital portion one of such civil effects embraced in the law?

4. Is the plaintiff in necessitous circumstances and otherwise entitled to claim the marital portion?

I.

The validity of the Maine divorce depends upon the question of fact, whether or not the libellant, Mrs. E. P. Smith, had, at the commencement of the proceedings, acquired a *bona fide* residence or domicil in Maine.

Although the law fixes the domicil of the wife as being that of her husband, universal jurisprudence recognizes an exception to the rule in the case where the husband's conduct has been such as to furnish lawful ground for a divorce, which justifies her in leaving him, and, therefore, necessarily authorizes her to live elsewhere and to acquire a separate domicil. Cheevet vs. Wilson, 9 Wall. (U. S.) 108; Barber vs. Barber, 21 How. (U. S.) 582; 2 Bishop, Mar. and Div., 475; Schouler, Hus. and Wife, Sec. 574; 5 Am. and Eng. Encyc. of Law, p. 756.

Where such a separate domicil, based on lawful cause, is *bona fide* established by the wife, her marriage *status* becomes subject to the jurisdiction of the courts of that domicil. Says Mr. Cooley: "We conceive the true rule to be that the actual, *bona fide* residence of either husband or wife within a State, will give to that State authority to determine the *status* of such party, and to pass upon questions affecting his or her continuance in the marriage relation, irrespective of the locality, or of any alleged offence; and that any such court in that State, as the Legislature may have authorized to take cognizance of the subject, may lawfully pass upon such questions and annul the marriage. But if a party goes to a jurisdiction other than that of his domicil, for the purpose of procuring the divorce, and has residence there for that purpose only, such residence is not *bona fide*, and does not confer upon the courts of that State or country jurisdiction over the marriage relation, and any decree they may assume to make would be void as to the other party." Cooley Const. Lim., 4th Ed., p. 502. See also authorities above cited, and Pennoyer vs. Neff, 94 U. S. 724.

The statute of Maine provides: "A divorce from the bonds of matrimony may be decreed by the Supreme Judicial Court in the

county where either party resides at the commencement of pro-
ceedings, when the judge deems it reasonable and proper, conducive
to domestic harmony, and consistent with the peace and morality of
society, if the parties were married in this State or cohabited here
after marriage."

Art. 142 of the Civil Code of Louisiana provides: "Wherever a
marriage shall have been contracted in this State, and the husband,
after such marriage, shall remove, or shall have removed, to a for-
eign country with his said wife, if said husband shall behave, or have
behaved, toward his wife in said foreign country in such a manner as
would entitle her, under our laws, to demand a separation from bed
and board, it shall be lawful for her, on returning to the domicil
where her marriage was contracted, to institute suit there against
her said husband for the purpose above mentioned, in the same man-
ner as if they still domiciliated in said place. In such cases an attor-
ney shall be appointed by the court to represent the absent defend-
ant; the plaintiff shall be entitled to all the remedies and conserva-
tive measures granted by law to married women, and the judgment
shall have force and effect in the same manner as if the parties had
never left the State."

It thus appears that both States have adopted a similar policy on
this subject, and the comity of States authorizes us to give full effect
to such decrees as to both parties, under the rule, which we find well
formulated, as follows:

" A divorce granted by the court of the defendant's domicil, or
of the complainant's domicil, in a case in which the defendant has
been summoned, or has voluntarily appeared, is probably valid as to
both parties everywhere by comity.  If the defendant, though not
regularly appearing or summoned, has had actual notice, or even if
he has had only constructive notice, by publication or otherwise, the
divorce will be regarded valid as to both parties by comity, in such
States as have adopted the policy of such divorces by similar legis-
lation, or otherwise."   5 Am. and Eng. Encyc. of Law, p.   760;
Doughty vs. Doughty, 28 N. J. Eq. 531;  Van Orsdal vs. Van Orsdal,
67 Iowa, 39.

In this case the defendant received actual notice, and while such
notice, served extra-territorially, could not subject him to the per-
sonal jurisdiction of the court, it was at least equivalent to any other
constructive service, and was made in accordance with the statute of

Maine, and with the direction of the court based thereon. Rev. Stat. of Maine, 1871, p. 619.

We conclude, therefore, that the only question affecting the validity of the Maine decree of divorce is the question of fact as to whether the complainant had acquired such *bona fide* residence or domicil in Maine as gave the courts of that State jurisdiction over her marriage *status*.

The better opinion is that the decree is not conclusive upon the jurisdictional facts essential to its maintenance, but that its invalidity, due to want of jurisdiction, may be shown in any court. Sewall vs. Sewall, 122 Mass. 156; People vs. Dowell, 25 Mich. 247.

The United States Supreme Court has referred to this question, but declined to decide it. Cheever vs. Wilson, 9 Wall. 108.

We conceive it to be our duty in such a case to require very full and conclusive proof of the *bona fides* of the acquired domicil; and the evidence on the point here presented is not entirely satisfactory. We should hesitate, on such proof, to maintain the validity of a divorce so obtained. But we find it unnecessary now to decide this point, and have discussed it so fully mainly to show the exact *status* of the divorce decree, as one, presenting upon its face, no intrinsic nullity, and subject to attack only on proof of extrinsic facts undermining the jurisdiction.

This is important as affecting the question of good faith in the subsequent marriage contracted between the plaintiff and Alex. Smith.

II.

Article 117 of the Civil Code provides:

" The marriage which has been declared null produces, nevertheless, its civil effects as it relates to the parties and their children, if it has been contracted in good faith."

And Article 118:

" If only one of the parties acted in good faith, the marriage produces its civil effects only in his or her favor, and in favor of the children born of the marriage."

The sole condition prescribed by the law to give civil effects to a putative marriage is good faith on the part of one or both the parties. Without assuming to legislate, we can not add to the requirements of the law. 1 Marcadé, p. 522; 1 Baudry LaCantinerie, p. 329.

The good faith referred to, means an honest and reasonable belief

that the. marriage was valid and that there existed no legal impediment thereto.   Suc. Taylor, 39 An. 823; Barfield's Case, 30 An. 1397; Navarro's Case, 24 An. 298; Aleston's Case, 15 An. 157; Patton vs. Phila, 1 An. 98.

The party alleging good faith can not close her ears to information or her eyes to suspicious circumstances.   She must not act blindly or without reasonable precautions.   In Taylor's case we had before us a woman who acted simply on the statement of the man, that he was divorced, although he was not so in fact, and although she knew his living wife, by whom she had been informed there was no divorce, and had been warned by others that there was none.   We held that good faith could not be credited under such circumstances. The facts of that case are in such pointed contrast with those of the instant one that they need no comment.

We have already detailed the facts, which show conclusively that plaintiff's belief in the validity of her marriage was shared by both the former husband and wife, accepted by their friends and by the community generally, and, in point of fact, supported by a decree of divorce valid upon its face, never questioned by any one, and which could only have been annulled on proof of extrinsic facts, destroying the jurisdiction of the court.   A stronger case of good faith could not be presented.

### III.

The Code provides, as we have seen, that the putative marriage produces its "civil effects," as it relates to the parties in good faith.

The words " civil effects " are used without restriction, and necessarily embrace all civil effects given to marriage by the law; or, in the language of Marcadé, in commenting on the identical article in the French Code, such a marriage, "although actually null, has the same effects as if it were not null, the ordinary effects of a valid marriage.   *   *   Every marriage, though invalid, if contracted in good faith, produces the effects of a valid marriage in the interval between the celebration and the judicial declaration of nullity; when once such declaration intervenes, the marriage produces no further effect; but, be it understood, the effects produced remain forever."   1 Marcadé, 525.

The marriage of plaintiff was never declared null during the life of Alexander Smith; it existed as a putative marriage at the instant

of his death, and the civil effects resulting therefrom were then complete and indestructible.

That the right to the marital fourth, under the circumstances defined in the law, is one of the civil effects of the marriage, does not, as it seems to us, admit of dispute. If not such an effect, what kind of effect is it? It is true that the article of our Code, allowing the marital fourth, is directly derived from the Spanish law, being taken from Partida VI., Title xiii., Law 7. It is equally true that under the Spanish law only the legitimate wife, under a valid marriage, could claim it, and not a merely putative wife. But why? The answer is self-evident. Because the Spanish law contains no general provision, giving *all* civil effects to putative marriages. The only civil effects allowed by that law to the putative marriage are such as are sanctioned by special provisions, and the right to the marital fourth received no such sanction. Partida IV., Title xiii., Law 1.

White's New Recop. B. 1, T. 7, Sec. 6; Patton vs. Philadelphia, 1 An. 105; and Spanish authorities there cited.

So, the commentators on the French Code, in enumerating the civil effects produced by the putative marriage, do not include the marital portion, for the very simple reason that the French Code does not recognize or provide for any such portion. Reference to those systems is, therefore, futile.

Differing from both of them, our Code embodies both provisions, viz.: That of the French law giving to putative marriages all the civil effects of a valid marriage; and that of the Spanish law authorizing the claim of the marital portion as one of the civil effects of a marriage.

We may add that, while the Roman law established the marital portion, in the 53d and 117th Novels of Justinian, we are not advised that the civil effects of marriage were, under that system, given to putative marriages, and, therefore, the authorities under that system are equally inapplicable. We are bound to hold that the right to the marital portion is one of the civil effects of marriage, and that it was produced by the marriage of plaintiff, even conceding that it was only putative, although we do not decide against its validity.

IV.

The final question is, whether the plaintiff's case presents the conditions entitling her to the marital portion. She brought no dowry.

Smith died rich. The only question is whether he left plaintiff "in necessitous circumstances." It is well settled in our jurisprudence that the terms "necessitous circumstances" are used relatively to the fortune of her husband and to the condition in which she lived during the marriage. As said in one case, "in estimating her necessities, the law requires that we should take into consideration the condition of her husband and the habits of life which his ample fortune must have engendered in his family. The rule derived from the Roman and Spanish law in such cases is, that the surviving wife is entitled to the marital portion, unless she has the means *bene et honeste vivere*, according to the condition of her husband." Dunbar vs. Heirs, 5 An. 159.

The evidence satisfies that she has not such means. She has nothing except certain donations made to her by him, consisting of a painting, valued at $300; some furniture, valued at $500; and a house, stated to be worth $3750. In her prayer for judgment, she allows that proper and reasonable deductions shall be made on account of said donations.

We think she is entitled to the judgment prayed for.

It is, therefore, adjudged and decreed that the judgment appealed from be avoided and reversed, and that there be now judgment in favor of plaintiff and against the defendant guardian, declaring plaintiff to be entitled to, and to have and receive out of the succession of Alexander Smith, deceased, and from his said heirs in possession thereof by their said guardian, a child's share or one-fifth part or share thereof in usufruct, less such deductions on account of certain donations made to plaintiff by said Smith during his lifetime, as may be just and reasonable, and that she be put in possession of the same, defendant to pay costs in both courts.

Rehearing refused.