### RAILROAD COMPANY v. COUNTY OF HAMBLEN.

Where, under a decree to enforce a statutory lien retained by the State upon the property, real and personal, stock, and franchises of a railroad company, the property and franchises were sold, — *Held*, that the property was thereafter subject to taxation under the laws of the State, as immunity therefrom, if possessed by the company, did not pass to the purchaser.

ERROR to the Supreme Court of the State of Tennessee.

This was an action brought by the East Tennessee, Virginia, and Georgia Railroad Company, against the County of Hamblen, Tennessee.   The question at issue was as to the liability of the company to pay taxes on the assessed value of that portion of its road which lies in that county.

The Cincinnati, Cumberland Gap, and Charleston Railroad Company was chartered by an act of the General Assembly of Tennessee, approved Nov. 18, 1853, the eighth section of which provides, " That said company shall be, and they are hereby, vested with all the rights, powers, and privileges, and subject to all the restrictions and liabilities, of the Nashville and Louisville Railroad Company, except where otherwise provided for in this charter."

A charter was granted to the latter company Feb. 2, 1840, the fortieth section of which provides, —

" That the capital stock in said company, the dividends thereon, and the roads and fixtures, depots, workshops, warehouses, and vehicles of transportation belonging to the company, shall be for ever exempt from the taxation in each and every of the said States of Tennessee and Kentucky, and it shall not be lawful for either of

the said States, or any corporation or municipal police, or other authority thereof, or of any town, city, county, or district thereof, to impose any tax on such stock or dividends, property or estate: *Provided*, the stock or dividends, when the said dividends shall exceed the legal interest of the State, may be subject to taxation by the State in common with and at the same rate as money at interest or interest thereon, and when the State shall impose a tax on the dividends declared in favor of the stockholders of the company, the tax shall extend only to such proportion of the said dividends and capital stock as the part of the road in that State shall bear to the whole road, from the profits of which the said dividends have arisen, which tax, when imposed, shall be retained by the company out of the dividends and paid to the State; but no tax shall be imposed so as to reduce the part of the dividends to be received by the stockholders below the legal interest of the State."

The company first named borrowed from the State her coupon bonds. To secure their payment, the General Improvement Act of 1852, and the acts amendatory thereof, which authorized the loan, retained a lien therefor upon the property, real and personal, stock, and franchises of the company. The latter failing to pay the interest, a law was passed conferring upon the Chancery Court of Nashville jurisdiction of all questions arising upon loans made under those acts to the various railroad companies. The State filed her bill July 21, 1871, in that court to enforce her lien, and secure the payment of the bonds so advanced to the company. A decree was passed for the sale of the property, which is set out in the opinion of this court. McGhee, the purchaser under the decree, conveyed the property to the East Tennessee, Virginia, and Georgia Railroad Company.

The Circuit Court for the county of Hamblen held that the company was subject to the tax, and entered judgment accordingly, upon the affirmance of which by the Supreme Court the case was removed here.

*Mr. George Brown* for the plaintiff in error.
*Mr. William Y. C. Humes, contra.*

Mr. Chief Justice Waite delivered the opinion of the court.

This case is, we think, governed by that of *Morgan* v.

*Louisiana,* 93 U. S. 217. - We there held that immunity from taxation was not such a franchise of a railroad corporation as would pass by a sale under a mortgage " on the property and franchises of the company," and that the term " franchises " was not synonymous with "rights, privileges, and franchises," " rights, powers, and privileges," and the like. The Cincinnati, Cumberland Gap, and Charleston Railroad Company was by its charter invested " with all the rights, powers, and privileges" of the Nashville and Louisville Railroad Company; but the statutory lien retained by the State as security for its advances covered only " the property, real and personal, stock, and franchises " of the Cincinnati, Cumberland Gap, and Charleston Company. The decree of the Chancery Court of Nashville provided that if the railroad company itself, or some one or more of its stockholders, should not purchase " the said railroad and all the property, real, personal, and mixed, and the franchises and privileges of said railroad company, for $700,000, payable in the bonds of the State of Tennessee, with the coupons attached of and after Jan. 1, 1871," or sell " the same to other parties . . . under the conditions, liabilities, and restrictions as aforesaid, which are fully set forth in said . . . decree," then the commissioners of the State might sell " all the property and franchises of the . . . company to the best advantage, either at public or private sale." Neither the company nor its stockholders bought under this decree; but C. M. McGhee, for himself and his associates, proposed to the commissioners to pay for the road $300,000 in bonds of the State, with January, 1871, coupons attached; and in his proposal he said, " I expect a full and perfect title to the road, including the State's interest, franchises, and privileges." This proposition was accepted by the commissioners, and the sale, reported to the court, was confirmed by decree in the following words : " . . . which report being seen, heard, and fully understood by the court, and not excepted to, is in all things confirmed; and it appearing to the satisfaction of the court that the sales of the Knoxville and Kentucky and the Cincinnati, Cumberland Gap, and Charleston Railroad, with their property and franchises, have been made by the commissioners in conformity with the previous decrees, it is therefore ordered, adjudged, and decreed

that these said sales be confirmed, and that the commissioners retain the bonds and collect the residue of the purchase-money as the same falls due, and, when the same is fully paid, make title to the purchasers according to the terms of the contract and former decrees of this court. It is further ordered and decreed by the court that the purchasers be at once put in possession of these roads, severally bought by them, with all the property, franchises, and effects so bought by them as aforesaid, and for this purpose, if necessary, the clerk and master is hereby ordered and directed, upon the application of either of said purchasers, to issue a writ of possession, or writs of possession, directed to the sheriff of the several counties in this State through which the roads may run, or in which any part thereof, or of the property sold, may be, directing said sheriff to put the purchasers in possession of such property at once, and make return of his action to this court. It is further ordered, adjudged, and decreed that all the acts of the commissioners in reference to said sales be, and the same are hereby approved, sanctioned, and ratified by the court."

From this it will be seen that although McGhee in his proposal said, " he expected a full and perfect title to the road, . . . franchises, and privileges," the court, in passing upon the confirmation, treated the sale as of the " property and franchises," " in conformity with the previous decrees," and directed that, when the agreed price was paid in full, the commissioners " make title to the purchasers according to the terms of the contract and former decrees of this court."

In this way, as it seems to us, the title of these purchasers was confined to the property and franchises of the company, notwithstanding the use of the additional word " privileges " in the proposal. The authority to sell embraced only " property and franchises," and the sale recognized by the court as having been made is confined within the same limit. An opportunity was afforded the company itself or its stockholders to discharge the State lien or buy the State's interest, on the payment of $700,000 in State bonds. In that event, the original franchises and privileges of the company were to remain unimpaired or pass to the company's vendee ; but if a sale was

made by the State authorities to a third party under the statutory lien, then only the franchises which the lien covered were to be transferred; and those, as we said in *Morgan* v, *Louisiana* (*supra*), were only " the positive rights or privileges, without the possession of which the road of the company could not be successfully worked." The act of Dec. 21, 1870, does not purport to enlarge the State's interest. It simply provided a way in which the statutory lien, as originally retained, could be enforced; and gave authority, upon a sale of " any of the franchises," to transfer and vest in the purchaser " all the rights, privileges, and immunities appertaining to the franchises sold." As in this case only franchises " essential to the operations of the corporation, and without which its road and works would be of little value " (*Morgan* v. *Louisiana*), were sold, the immunity from taxation did not pass as an incident.

Our attention has been called to the case of the *Knoxville & Ohio Railroad Co.* v. *Hicks*, decided by the Supreme Court of Tennessee at its September Term, 1877, but not yet reported in the regular series of reports, as holding that this immunity did pass under a similar sale. We do not so understand that case. There it appears that the Chancery Court of Nashville, acting under the jurisdiction conferred by the act of Dec. 21, 1870, " distinctly adjudged that not only the property of the old company, but all its rights, franchises, privileges, and immunities, as defined by the charter and laws and the decree in the cause, passed to and vested in the new company." Here, on the contrary, the same court adjudged, under the authority of the same act, that only the " property and franchises " passed. The same difference, therefore, exists between these cases that there is between *Humphrey* v. *Pegues* (16 Wall. 244) and *Morgan* v. *Louisiana, supra.* In *Humphrey* v. *Pegues*, we held that immunity from taxation did pass under a transfer of " all the powers, rights, and privileges " of a railroad corporation, but, in *Morgan* v. *Louisiana*, that it did not by a transfer of " property and franchises " only.

This disposes of the case, and makes it unnecessary to consider whether the immunity from taxation which the Nashville and Louisville Company had by its charter was granted to the Cincinnati, Cumberland Gap, and Charleston Company,

or whether, if it was, this immunity could be transferred to a purchaser at a sale to enforce the statutory lien retained by the State, even with the aid of the jurisdiction conferred on the Chancery Court of Nashville by the act of Dec. 21, 1870.

*Judgment affirmed.*