# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## LAKE DRUMMOND CANAL & WATER CO. v. COMMONWEALTH.

### January 12, 1905.

1. TAXATION—*Exemption from Taxation—Foreclosure of Mortgage Given by a Corporation Whose Property Was Exempt—"Rights, Privileges and Franchises."*—Under an Act of the General Assembly of Virginia, passed December 1, 1787, a charter was granted to the Dismal Swamp Canal Company, by which, for certain considerations therein expressed, the property of the company was vested in the proprietors, their heirs and assigns forever, as tenants in common in proportion to their respective shares, the same to be deemed real estate, and be forever exempt from the payment of any tax, imposition, or assessment whatever. In 1851, the State of Virginia adopted a constitution which provided that "taxation shall be equal and uniform throughout the Commonwealth, and all property shall be taxed in proportion to its value." This provision or its equivalent has been contained in every Constitution of the State since adopted down to the present Constitution. In 1867 the Dismal Swamp Canal Company gave a deed of trust on all the property of the company, which was foreclosed in 1880, and the property conveyed to the purchasers, who assumed the corporate name of the Dismal Swamp Canal Company. The new company also gave a deed of trust on all the property of the Canal Company of every description, and this was foreclosed in a like manner. There were several other deeds of trust of like character by succeeding companies which were finally foreclosed, until finally the property, under the last foreclosure sale, was conveyed to the appellant, which, as its predecessors in title had done, became a corporation under the provisions of sections 1233 and 1234 of the Code, which provide that upon conveyance to the purchasers in such case the old company shall be *ipso facto* dissolved and the purchasers shall forthwith be a corporation and succeed "to all such *franchises*,

*rights* and *privileges* . . . as would have been had by the first company but for such sale and conveyance." The purchaser's interest in the new company is declared to be personal estate, and to stand on the same footing as shares in joint stock companies generally. The appellant, being the present owner of the canal, and all of its property and appurtenances, by reason of the several foreclosures above mentioned, claims that it is entitled to all "the franchises, rights and privileges" conferred upon the Dismal Swamp Canal Company, by the Act of 1787, and, among them, immunity from taxation.

*Held:* 1. As between the State and the first company the charter is a contract, the obligation of which the State cannot impair.

2. The "franchises, rights and privileges" acquired by the appellant by virtue of its purchase and acceptance of a conveyance under the provisions of sections 1233 and 1234 of the Code do not embrace an exemption from taxation. Exemption from taxation is never presumed, but must be declared, or it will never be deemed to exist. The language of section 1234 of the Code, under which appellant claims, does not necessarily embrace a grant of exemption from taxation, nor is there an equivalent implication by necessary construction, nor is there anything in the context, the subject matter, or the relation of the parties, to warrant the conclusion that the legislature intended to grant an exemption, and hence it does not exist.

3. The company which purchased under the foreclosure of the mortgage of 1867 was incorporated under the provisions of section 1234 of the Code, and at that time the legislature had no power, if so disposed, to grant a perpetual exemption from taxation to a corporation, either by a special act of incorporation, or by force of general law. The property was, therefore, taxable in the hands of that company, and is now taxable in the hands of appellant.

Appeal from State Corporation Commission.

*Affirmed.*

The opinion states the case.

*William H. White* and *Theodore S. Garnett*, for the appellant.

*Attorney-General William A. Anderson*, for the Commonwealth.

KEITH, P., delivered the opinion of the court.

On December 1, 1787, the General Assembly of Virginia granted a charter to the Dismal Swamp Canal Company, which among other things recites, "that for and in consideration of the expenses the said proprietors will be at, not only in cutting the said canal, erecting locks, making causeways and performing other works necessary for this navigation, but in maintaining and keeping the same in repair, the said canal, locks, causeways, and other works, with all their profits, shall be and the same are hereby vested in the said proprietors, their heirs and assigns forever, as tenants in common in proportion to their respective shares, and the same shall be deemed real estate, and be forever exempt from the payment of any tax, imposition, or assessment whatever, and it shall and may be lawful for the said president and directors at all times for ever hereafter to demand and receive at some convenient place near one of the extremities of the canal, for all commodities transported through it or over the causeways, tolls, according to the following table and rates which shall be in Spanish milled dollars, to-wit:"

In the concluding section of the charter it is provided that the act creating the corporation should be in effect from and after the passage of a like act by the General Assembly of North Carolina, and such an act was passed in the year 1790, and the internal improvement contemplated in the charter was undertaken, completed, and put into operation.

In the year 1867 a deed of trust was executed upon all the property of the company, which was foreclosed in 1880, and conveyance made to certain purchasers who assumed the corporate name of the Dismal Swamp Canal Company. This company in turn executed a deed of trust upon all the property of the canal of every character to certain trustees, which was foreclosed and conveyance made in 1889 to certain purchasers who assumed the

corporate name of the Norfolk & North Carolina Canal Company. The corporation thus created also executed a deed of trust which was foreclosed in the year 1892, and conveyance of the property made to purchasers who assumed the name of the Lake Drummond Canal & Water Company, the style under which the canal is now operated.

The Lake Drummond Company now owns the canal and all its property and appurtenances, and, on the 29th of February, 1904, the State Corporation Commission issued a summons requiring it to appear and show cause why a fine should not be imposed upon it for failing to make report to the Commission, as provided by section 27 of an act of the General Assembly of Virginia, approved April 16, 1903, of all its real and personal property of every description, and of its receipts for transportation. In obedience to this summons, the company appeared and answered, claiming that all the franchises, rights and privileges conferred upon the Dismal Swamp Canal Company by the act of 1787, whereby an irrepealable immunity from taxation was granted by the State, have, by virtue of the foreclosures under the several deeds of trust before mentioned, devolved upon and vested in the present Lake Drummond Canal & Water Company.

The State Corporation Commission was of opinion that the answer was insufficient, and imposed a fine upon the defendant for failure to make report as required by law, and from this order the Canal Company appealed.

It would be a fruitless task to inquire into the power of a State legislature to enter into a contract granting a perpetual immunity from taxation so as to bind succeeding legislatures. The power is too thoroughly established by authority to be any longer open to question.

In *The State of New Jersey* v. *Wilson*, 7 Cranch. 165, 3 L. Ed. 303, the Supreme Court held, Judge Marshall delivering

the opinion, that a legislative act declaring that certain lands which should be purchased for the Indians, should not thereafter be subject to any tax, constituted a contract which could not be rescinded by a subsequent legislative act, and the principal thus established has been followed in cases almost without number.

The case under consideration possesses all the elements of a contract. The act of 1787 recites, "that for and in consideration of the expenses the said proprietors will be at, not only in cutting the said canal, erecting locks, making causeways, and performing other works necessary for this navigation, but in maintaining and keeping the same in repair, the said canal, locks, causeways, and other works . . . shall be . . . forever exempt from the payment of any tax, imposition or assessment whatever," and there can be no doubt that, in the language of the Corporation Commission, there was a contract between the State and the corporation, which could not be violated by the State by any attempt in the future to repeal the immunity from taxation granted to this corporation. It remains then to consider whether or not this immunity has passed to the present corporation.

In the petition for appeal it is claimed that the charter of the Dismal Swamp Canal Company contains a perpetual exemption from taxation of "all the property, rights and franchises of the company, its successors and assigns," and this exemption accrues to the benefit of the petitioner by force of sections 1233 and 1234 of the Code of Virginia, by which it became such successor and assignee by the name of the Lake Drummond Canal and Water Company; and, secondly, that the exemption being a contract with the State of Virginia, and a compact between the State of Virginia and the State of North Carolina, expressly declared by the concurrent acts of said States, the act of assembly of April 16, 1903, section 27, under which this proceeding

is taken by the State Corporation Commission, if enforced, is a violation of the Constitution of the United States, which prohibits the impairment of the obligations of contracts, and is therefore unconstitutional and void.

Sections 1233 and 1234 of the Code are as follows:

"Sec. 1233. *Sale of company's property under deed of trust; what it passes; dissolution of company; purchaser, a corporation.*—If a sale be made under a deed of trust or mortgage executed by a company on all its works and property, and there be a conveyance pursuant thereto, such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed, and all other property of which it may be possessed at the time of the sale, other than debts due to it. Upon such conveyance to the purchaser, the said company shall *ipso facto* be dissolved. And the said purchaser shall forthwith be a corporation, by any name which may be set forth in the said conveyance, or in any writing signed by him and recorded in the court in which the conveyance shall be recorded.

"Sec. 1234. The corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights, and privileges, and perform all such duties as would have been had, or should have been performed, by the first company, but for such sale and conveyance, including the duty of maintaining and operating any branch or lateral road which may have been constructed and operated before the sale, and of transporting freight and passengers therein save only that the corporation so created shall not be entitled to the debts due to the first company, and shall not be liable for any debts of, or claims against, the said first company which may not be expressly assumed in the contract of purchase, and the whole

profits of the business done by such corporation shall belong to the said purchaser and his assigns. His interest in the corporation shall be personal estate, and he or his assigns may create so many shares of stock therein as he or they may think proper, not exceeding together the amount of stock in the first company at the time of the sale, and assign the same in the book to be kept for that purpose. The said shares shall thereupon be on the footing of shares in joint stock companies generally, except only that the first meeting of the stockholders shall be held on such day and at such place as shall be fixed by the said purchaser, of which notice shall be published for two successive weeks in a newspaper."

Without undertaking to trace the history of these sections beyond the Code of 1849, it is enough to say that they have undergone little change since that time. To those sections the Lake Drummond Company must look for its corporate franchises, rights and privileges. By force of section 1233 the foreclosure of the deed of trust and conveyance to the purchaser under it by the Dismal Swamp Canal Company, operated *ipso facto* to dissolve that company, and so with the successive sales, purchases and conveyances under subsequent deeds of trust. By section 1234, the new corporation thus created succeeds to "all such franchises, rights and privileges, and perform all such duties as would have been had, or should have been performed by the first company, but for such sale and conveyance."

It follows from what has been said that the existing company, by virtue of the conveyance to it, and as a corporation having its origin and existence only under and by force of section 1234, succeeds to only such franchises, rights, and privileges as pass by force of the language employed in that section, and not by virtue of the assignability of the original contract of exemption from taxation granted to the Dismal Swamp Canal Company, its successors and assigns.

The case is different from that of *New Jersey* v. *Wilson*, *supra*. In that case the exemption was held to pass with the land. The purchaser of the Indian title was a natural person. He did not derive his capacity to receive from the State of New Jersey. "The privilege," says the opinion in that case, "though for the benefit of the Indians, is annexed, by the terms which create it, to the land itself, not to their persons. It is for their advantage that it should be annexed to the land, because in the event of a sale, on which alone the question could become material, the value would be enhanced by it. It is not doubted but that the State of New Jersey might have insisted on a surrender of this privilege as the sole condition on which a sale of the property should be allowed. But this condition has not been insisted on. The land has been sold, with the assent of the State, with all its privileges and immunities. The purchaser succeeds, with the assent of the State, to all the rights of the Indians. He stands with respect to this land in their place, and claims the benefit of their contract. This contract is certainly impaired by a law which would annul this essential part of it."

The case of an artificial person—of a corporation deriving its existence, its capacities and its franchises from the State—is wholly different from that of a natural person. In the Indian land case, all that was enjoyed by the Indians passed to the purchaser from them. In the absence of objection by the State, its assent in such case being presumed. In the case of a corporation its capacity to take is to be measured by the expressed will of the State.

What force then is to be given to the words, "franchises, rights, and privileges" in this section?

There are numerous cases decided by the Supreme Court of the United States upon the subject, and it is a matter of regret that they appear not to be entirely harmonious. There is, however, a principle upon which they seem to be agreed.

In *Providence Bank* v. *Billings*, 4 Peters, 514, 7 L. Ed. 939, Chief Justice Marshall thus states the law: "That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to reaffirm. They are acknowledged and asserted by all. It would seem that the relinquishment of such a power is never to be assumed. We will not say that a State may not relinquish it; that a consideration sufficiently valuable to induce a partial release of it may not exist; but as the whole community is interested in retaining it undiminished, that community has a right to insist that its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear." This may be regarded as the controlling canon of interpretation in such cases.

In *Tucker* v. *Ferguson*, 22 Wallace, 527, 22 L. Ed. 805, the principle is maintained that the taxing power may be restrained by contract in special cases for the public good, but such a contract "is to be rigidly scrutinized, and never permitted to extend, either in scope or duration, beyond what the terms of the concession clearly require."

In *Chicago, Burlington, &c. R. R. Co.* v. *State of Missouri*, 120 U. S. 569, 30 L. Ed. 732, 7 Sup. Ct. 693, Justice Harlan said: "It is a settled doctrine of this court, that an immunity from taxation by the State will not be recognized unless granted in terms too plain to be mistaken."

In *Pickard* v. *East Tenn., &c. R. Co.*, 130 U. S. 637, 32 L. Ed. 1051, 9 Sup. Ct. 640, Justice Field says: "It has been held, and the doctrine has been so often repeated that it is no longer an open question, that the legislature of a State may exempt the property of particular persons or corporations from taxation, either for a limited period or perpetually; but to justify the conclusion that such exemption is granted, it must appear by language so clear and unmistakable as to leave no doubt of the

purpose of the legislature. The power of taxation is one of the highest attributes of sovereignty, and the suspension of its exercise as to any persons or property is not a matter to be presumed or inferred. It must be declared, or it will not be deemed to exist. If the legislature can lay aside a power devolved upon it for the good of the whole people of the State for the benefit of a private party, it must speak in such unmistakable terms that they will not admit of any reasonable construction consistent with the reservation of the power. Yielding to the doctrine that immunity from taxation may be granted, that point being already adjudged, it must be considered as a personal privilege not extending beyond the immediate grantee, unless otherwise so declared in express terms. The same considerations which call for clear and unambiguous language to justify the conclusion that immunity from taxation has been granted in any instance, must require similar distinctness of expression before the immunity will be extended to others than the original grantee. It will not pass merely by a conveyance of the property and franchises of a railroad company, although such company may hold its property exempt from taxation."

Can it be said that section 1234, in clear and unambiguous language justifies the conclusion that the legislature intended that the original immunity from taxation granted to the Dismal Swamp Canal Company, should pass to and vest in the Lake Drummond Canal & Water Company? Upon this point, as we have said, the authorities are not easy to be reconciled.

In *Humphrey* v. *Pegues*, 16 Wall. 244, 21 L. Ed. 326, it appears that the Cheraw & Darlington Railroad Company was chartered by the General Assembly of South Carolina, which provided, that for the purpose of organizing and forming the company, all the powers conferred by the charter of the Wilmington & Manchester Railroad Company on the commissioners therein named, should be vested in the town of Cheraw, and all

the powers, rights and privileges granted to that company, shall be and are hereby granted to the Cheraw Railroad Company, and subject to the conditions therein contained, and the question was, what passed under the terms, "powers, rights and privileges." Mr. Justice Hunt, in his opinion, said: "All the 'privileges,' as well as powers and rights of the prior company, were granted to the letter. A more important or more comprehensive privilege than a perpetual immunity from taxation can scarcely be imagined. It contains the essential idea of a peculiar benefit or advantage, as a special exemption from a burden falling upon others." And the immunity from taxation was upheld.

In *Morgan* v. *State of Louisiana,* 93 U. S. 217, 23 L. Ed. 860, Mr. Justice Field uses the following language: "Much confusion of thought has arisen in this case and in similar cases from attaching a vague and undefined meaning to the term 'franchises.' It is often used as synonymous with rights, privileges and immunities, though of a personal and temporary character; so that, if any one of these exists it is loosely termed a 'franchise,' and is supposed to pass upon a transfer of the franchises of the company. But the term must always be considered in connection with the corporation or property to which it is alleged to appertain. The franchises of a railroad corporation are rights or privileges which are essential to the operations of the corporation, and without which its road and works would be of little value; such as the franchise to run cars, to take tolls, to appropriate earth and gravel for the bed of its road, or water for its engines, and the like. They are positive rights or privileges, without the possession of which the road of the company could not be successfully worked. Immunity from taxation is not one of them. The former may be conveyed to the purchaser of the road as part of the property of the company; the latter is personal, and incapable of transfer without express statutory direction." *Railroad Co.* v. *Hamlin County,* 102 U. S. 273, 26 L. Ed. 152; *Pickard* v. *Railroad Co., supra.*

In the latter case, it is said upon this point, that "there are some cases where the term 'privileges' has been held to include immunity from taxation, but that has generally been where other provisions of the Act have given such meaning to it. The later and, we think, the better opinion is that, unless other provisions remove all doubt of the intention of the legislature to include the immunity in the term 'privileges,' it will not be so construed. It can have its full force by confining it to other grants to the corporation."

In *Phoenix Fire & Marine Ins. Co.* v. *State of Tenn.*, 161 U. S. 174, 40 L. Ed. 660, 16 Sup. Ct. 471, Mr. Justice Peckham says : "It cannot be denied that the decisions of this court are somewhat involved in relation to this question of exemption. It is difficult in some cases to distinguish the language used in each so far that the different results arrived at by the court can be seen to be founded upon a real difference in the meaning of such language. The question has sometimes arisen upon the consolidation of different companies, and sometimes upon a sale under a mortgage foreclosure. Among the former is the case of *Keokuk & W. R. Co.* v. *Missouri*, 152 U. S. 301, 38 L. Ed. 450; 14 Sup. Ct. 592, where under the laws of Missouri there was a provision that the consolidated companies should be 'subject to all the liabilities and bound by all the obligations of the companies within this State,' and 'be entitled to the same franchises and privileges under the laws of this State as if the consolidation had not taken place.' The question was said to admit of doubt whether under the name 'franchises and privileges' an immunity from taxation passed to the new company. Various cases are cited in the opinion, which was delivered by Mr. Justice Brown, showing the grounds taken by this court in such cases." The learned judge then discusses the decisions upon this subject, and reaches this conclusion : "If this were an original question, we should have no hesitation in holding that

the plaintiff in error did not acquire the exemption from taxation claimed by it, and we think at the present time the weight of authority, as well as the better opinion, is in favor of the same conclusion which we should otherwise reach." The exemption was denied, and the general principle re-affirmed, that there is no inference in favor of an exemption from taxation if the legislature did not affirmatively grant the right. "To assert," said he, "that there is an inference in favor of an exemption from taxation, is a complete overturning of the universal rule in regard to taxation. The power and the right to tax are always presumed, and the exemption is to be clearly granted. Mere silence is the same as a denial of exemption."

In the *Gulf & Ship Island Ry. Co.* v. *Hewes*, 183 U. S. 66, 46 L. Ed. 86, 22 Sup. Ct. 26, speaking of the construction to be given to language such as is used in section 1234, the court says that the better opinion is that a subrogation to the rights and privileges of a former corporation, does not include an immunity from taxation; citing *Phoenix Fire & Marine Ins. Co.* v. *Tenn.*, *supra.*

We come now to a case in which the Supreme Court has construed a statute identical with that found in our Code.

The State of West Virginia, by a charter granted to the Covington & Ohio Railroad Company, provided that "no taxation upon the property of the said company shall be imposed by the State until the profits of said company shall amount to ten *per cent.* on the capital of the company." Subsequently the legislature of that State passed an act which authorized a consolidation of the Covington & Ohio Railroad Company, when organized under the act of March 1, 1866, with one or more railroad companies, including the West Virginia Central Railway Company, the consolidated company to be known as the Chesapeake & Ohio Railroad Company, and to be vested with "all the rights, privileges, franchises and property which may

have been vested in either company prior to the act of consoli-
dation." By an act of the legislature, passed January 26, 1870,
it was, among other things provided that the Chesapeake &
Ohio Railroad Company might borrow such sums of money as
might be necessary, and secure the payment of such loans; and
the railroad company was thereby declared to be entitled to all
the benefits of the charter of the Covington & Ohio Railroad,
and to all the rights, interests, benefits and privileges, and be
subject to all the duties and responsibilities provided and
declared in the said contract, and in the statutes therein referred
to.   The Chesapeake & Ohio Railroad Company completed its
line of railroad and put the same into operation, and in order to
do so issued a large amount of bonds, secured by deed of trust,
and, in default of payment, proceedings of foreclosure and sale
of the property were prosecuted to final decrees in the courts of
Virginia and West Virginia; so that all the railroad property in
West Virginia was sold and conveyed to purchasers, who, in
pursuance of the statute then in force applicable thereto,
became a corporation under the name of the Chesapeake & Ohio
Railway Company.   The statute here referred to, as appears
from the opinion, is identical with, and is indeed taken from the
Code of Virginia.   In 1879 the legislature of West Virginia
passed an act subjecting the property of the Chesapeake & Ohio
Railway Company to taxation.   The question was ultimately
brought before the Supreme Court of the United States, in
*Chesapeake & Ohio Railway Co.* v. *Miller,* 114 U. S. 176, 29
L. Ed. 121, 5 Sup. Ct. 813.   Mr. Justice Matthews delivered an
elaborate opinion, from which we think it clearly appears, (1)
that the words somewhat relied upon by the plaintiff in error in
this case, that the grant of immunity from taxation was not
only to the original company but to "their heirs and assigns for-
ever," does not affect the result, the question being not whether
the immunity was capable of assignment, but whether there is a

clear expression of legislative intention that this immunity should pass to and vest in the new corporation created by force of section 1234. Says the court, "There is no claim that the exemption passed to the trustees in the trust deeds or mortgages given to secure the payment of the bonds of the company; and none can be made that it passed to the purchasers by the judicial sale made under the decree for foreclosure and sale, by force of the statute declaring what such a sale should pass. The language of the Act upon this subject is, that 'such sale and conveyance shall pass to the purchaser at the sale, not only the works and property of the company, as they were at the time of making the deed of trust or mortgage, but any works which the company may, after that time and before the sale, have constructed and all other property of which it may be possessed at the time of the sale, other than debts due to it.' So far, nothing is said of what rights, privileges, franchises and immunities shall vest in the purchaser in respect to the property, the title to which is thus conveyed. The Act, however, proceeds to say, that 'upon such conveyance to the purchaser, the said company shall *ipso facto* be dissolved.' From this it necessarily follows that all privileges, which by the terms of its charter were personal to it, ceased with its dissolution. But the statute adds: 'And the said purchaser shall forthwith be a corporation by any name which may be set forth in said conveyance or in any writing signed by him or them and recorded in the recorder's office of any county wherein the property, so sold, or any part thereof, is situated, or where said conveyance is recorded.' Thus is formed a new corporate body, succeeding to the title of the property sold and conveyed to it, but deriving its existence from this law and not from the original Act of incorporation, which constituted the charter of its predecessor, and with such powers, rights, privileges, franchises and immunities only as are conferred upon it by the law which has brought it into being.

"These are defined in the next succeeding section. So far as material to the question its language is: 'The corporation created by or in consequence of such sale and conveyance shall succeed to all such franchises, rights and privileges, and perform all such duties as would have been had, or should have been performed, by the first company, but for such sale and conveyance,' etc.

"It is earnestly contended on behalf of the plaintiff in error, that by virtue of this language, it is entitled to enjoy the property formerly belonging to the Chesapeake & Ohio Railroad Company, its predecessor, precisely as though it had been incorporated under the charter of that company, and therefore with the exemption from taxation which was conceded to that company. But broad, general and comprehensive as the language is, we cannot, in reference to the subject matter now in hand, apply it with that force and meaning. The words used are, it will be observed, 'franchises, rights and privileges,' . . . 'as would have been had, . . . by the first company, but for such sale,' etc. There is no express reference to a grant of any exemption or immunity; nothing is said in relation to the subject of taxation. The words actually used do not necessarily embrace a grant of such an exemption." Then follows a citation of *Morgan* v. *Louisiana*, 93 U. S. 217, 23 L. Ed. 860, which already appears in this opinion.

Continuing, Justice Matthews says: "Here there is no such express statutory direction. Nor is there an equivalent implication by necessary construction. There is nothing in the language itself, nor the context, nor the subject-matter of the legislation, nor the situation and relation of the parties to be affected, which indicates that a grant of an exemption from taxation to a particular railroad corporation, or to a class of such, was in the contemplation of the legislature. The subject-matter of this legislation was not the original construction of railroads, but the

operation of railroads already constructed.  The State was not in the attitude of a contractor, soliciting subscriptions of capital, in the formation of companies to undertake the risk of public improvements, for the benefit of the State, with the hazard of loss and perhaps financial ruin to the first promoters, and offering exemptions from taxation as a consideration, by way of contract, for the acceptance of its proposals.  It was legislating in reference to enterprises already undertaken, prosecuted and completed by companies originally thus incorporated, and who, by reason of insolvency, had been stripped of their property by creditors, and sentenced by the law to dissolution; and the purpose of the statute was simply to provide suitable means of incorporating the purchasers, to facilitate their use of the property, in operating it for the benefit of the public, as designed from the beginning.  These purchasers had not bought the immunity now demanded either from the State or the prior possessor.  The contract of the creditors would be fully met, on failure of payment of the stipulated debt, by subjecting to sale the property pledged for its payment, with such rights, franchises and privileges only as were necessary for its beneficial use and enjoyment.  The immunity from taxation, as we have already said, was not necessarily included in that designation. The debtor corporation, and its creditors combined, could not confer upon the purchasers any rights which were not assignable; and, as no consideration moved to the State for a renewal of the grant, there is no motive for finding, by mere construction and implication, what the words of the law have failed to express.  That certainty is not a reasonable interpretation for which no sufficient reason can be assigned.  We conclude, therefore, that the Act from, which the plaintiff in error derives its corporate existence and powers in West Virginia does not contain a renewal of the grant by exemption from taxation."

To the same effect is *Norfolk & Western Ry. Co.* v. *Pendleton,*

156 U. S. 667, 39 L. Ed. 574, 15 Sup. Ct. 413, which also construes statutes of this State.

There is another ground upon which the judgment of the Corporation Commission may be sustained.

The first mortgage upon the property of the Dismal Swamp Canal Company was executed in 1867. When it was foreclosed that company ceased to exist, and a new company came into existence, which derived its vitality from section 1234. Upon this point the authorities which we have considered are conclusive.

By the Constitution adopted in 1851, it is provided that taxation shall be equal and uniform throughout the Commonwealth, and all property shall be taxed in proportion to its value, which shall be ascertained in such manner as shall be prescribed by law. This provision, or its equivalent, has been continued in the organic law of this State down to the adoption of the present Constitution. It was beyond the power of the legislature, in the face of this provision, to have granted a perpetual exemption from taxation to a corporation, either by a special act of incorporation, or by force of a general law. This position seems to be incontrovertible in principle, and is abundantly supported by authority.

In *Keokuk R. Co. v. State of Missouri*, 152 U. S. 301, 38 L. Ed. 450, 14 Sup. Ct. 592, it is said: "When the new corporation came into existence, it came precisely as if it had been organized under a charter granted at the date of the consolidation, and subject to the constitutional provisions then existing, which required that no property, real or personal, should be exempted from taxation, except such as was used exclusively for public purposes; in other words that the exemption from taxation contained in section 9 of the original charter of the Alexandria & Bloomfield Railway Company did not pass to the Missouri, Iowa & Nebraska Company. As was said of an Arkansas corporation in *St. Louis, I. M. & S. R. Co. v. Berry*, 113 U. S.

465, 475, 28 L. Ed. 1055, 5 Sup. Ct. 529, 'It came into exist-ence as a corporation of the State of Arkansas, in pursuance of its constitution and laws, and subject in all respects to their restrictions and limitations.' Among these was that one which declared that 'the property of corporations, now existing, or hereafter created, shall forever be subject to taxation the same as property of individuals.' This rendered it impossible for the consolidated corporation 'to receive by transfer from the Cairo & Fulton Railroad Company, or otherwise, the exemption sought to be enforced in this suit.' "

In *Louisville, &c. R. R. Co.* v. *Palmes*, 109 U. S. 244, 27 L. Ed. 922, 3 Sup. Ct. 193, the court said: "But the grant to the Pensacola & Louisville Railroad Company by the Act of 1872, and that to the Pensacola Railroad Company by the Act of 1877, though in form the renewal or transfers of previously existing grants, were in fact the creation of new ones. In *Trask* v. *Maguire*, 18 Wall. 391, 21 L. Ed. 938, it was said, speaking of similar provisions in the Constitution of Missouri: 'The in-hibition of the Constitution applies in all its force against the renewal of an exemption equally as against its original creation.' " *Gulf, &c. Ry. Co.* v. *Hewes, supra. Maryland* v. *Northern Cent. Ry. Co.*, 44 Md. 131; *Bloxham* v. *F. C. & P. R. Co.*, 35 Fla. 625, 17 South. 902; *Shaw* v. *Covington*, 194 U. S. 593, 48 L. Ed. 1131, 24 Sup. Ct. 754.

If, therefore, the construction contended for by plaintiff in error be given to section 1234, its effect would be to violate that rule of equality and uniformity of taxation imposed by the Con-stitution of this State, in force when the several deeds of trust, under which the plaintiff in error claims, were executed and foreclosed.

Upon the whole case, we are of opinion that there is no error in the judgment of the Corporation Commission.

*Affirmed.*