## Richmond.

## Commonwealth of Virginia, at the Relation of the Board of Supervisors of Alleghany County, v. The Chesapeake and Ohio Railway Company.

### November 15, 1923.

1. Taxation—*Railroads—Exemptions—Consolidation of Companies—Case at Bar.*—An act authorizing the consolidation of two railroad companies provided that the new corporation should be "vested with all the *rights, privileges, franchises* and property which may have been vested in either company prior to the act of consolidation."

   *Held:* That the act expressly continued an exemption from taxation of a portion of the property of one of the old companies for the benefit of the new company.

2. State Corporation Commission—*Jurisdiction—Omitted Taxes—Railroads.*—The board of supervisors of a county filed a petition with the State Corporation Commission, asking the Commission to fix the valuation of eighteen miles of railroad of the Chesapeake and Ohio Railway Company lying within the county, in order that the board might lay thereupon the levies of the county, alleging that the taxing authorities erroneously omitted to assess this mileage for the years 1879-1901, inclusive. The railroad company challenged the jurisdiction of the Commission.

   *Held:* That as to the jurisdiction of the Commission there could be no doubt.

3. State Corporation Commission—*Successor to Railroad Commissioner and Board of Public Works—Assessment of Omitted Taxes—Case at Bar.*—Under section 156 (a) of the Constitution of Virginia, the State Corporation Commission succeeded to all powers and duties of the Railroad Commissioner and the Board of Public Works, and under section 508 of the Code of 1887, as amended by act of 1916, where it appeared that the eighteen miles of a railroad was not assessed for taxes for the years in controversy, it followed that it was the duty of the Commission to value the same and to assess the omitted State tax thereon, unless there be found a statutory provision which would operate to exempt the railroad from such taxation.

4. Taxation—*Railroad Property—Board of Supervisors—Laches—Limitations—Case at Bar.*—The board of supervisors of a county filed a

petition with the State Corporation Commission asking it to value eighteen miles of railroad in the county so that they might assess it for omitted taxes. The railroad plead the statute of limitations and laches.

*Held:* That as the county had nothing to do with the assessment of the railroad property for taxation, the board had not been guilty of laches, nor did the statute of limitations run against it.

5. TAXATION—*Omitted Taxes—Assessment in Good Faith—Full Disclosure.*— Before the exemption provided for in paragraph 7 of section 508 of the Code of 1887, as amended in 1916 (Code 1919, section 2336), can become operative, it is necessary, first, that the taxpayer make a full disclosure of his taxable property to the official charged with the duty of assessing the same, second, that there be an assessment in good faith by the assessing officer, and, third, an innocent error on the part of the assessing authority as a result of a misapprehension of the law.

6. TAXATION—*Omitted Taxes—Assessment in Good Faith—Full Disclosure—Case at Bar.*—In the instant case, a proceeding before the Corporation Commission to assess omitted taxes against eighteen miles of a railroad claimed to be exempt, it was held that if the railroad company had made full disclosure of its taxable property, including the eighteen miles in question, and the Board of Public Works made the assessment in good faith and erroneously determined that the eighteen miles were not assessable, as a matter of law, the valuation they placed upon the entire mileage is final.

7. TAXATION—*Omitted Taxes—Assessment in Good Faith—Full Disclosure.* —It is manifest that the object of the legislature in requiring the taxpayer to make a "full disclosure" was to make certain that the assessing officers received information as to all taxable property owned by him. When the taxpayer's report of his taxable property, though not technically full and complete, gives information which when added to the information the assessing authorities received from other sources, puts them in possession of the same facts they would have been possessed of if the taxpayer had made a report in strict compliance with the statute, the Commonwealth is not prejudiced by his failure to do more, and the taxpayer is entitled to the benefit of the statute (Code of 1919, section 2336) as to a full disclosure of his property.

8. TAXATION—*Omitted Taxes—Full Disclosure—Definition of "Disclosure."*—The definition of the word "disclosure" is: "To reveal to knowledge; to impart what is secret; to free from secrecy or ignorance; to tell that which has been left concealed." There can be no disclosure to one of facts already within his knowledge.

9. TAXATION—*Omitted Taxes—Railroad Property—Full Disclosure—Case at Bar.*—In the instant case a proceeding before the Corporation Commission to subject eighteen miles of the Chesapeake and Ohio Railway

Company's property for omitted taxes for the years 1879-1901, inclusive, it appeared from the careful consideration of the record that the Board of Public Works, as well as the board of supervisors, knew that the railway company owned the eighteen miles in question, and that the Board of Public Works assessed the entire road in Virginia, in good faith, honestly believing the eighteen miles in question were exempt from taxation, and, under a misapprehension of the law, placed no valuation thereon.

*Held:* That under paragraph 7 of section 508 of the Code of 1887, as amended in 1916 (section 2336 of the Code of 1919), the assessment was final.

Appeal from an order of the State Corporation Commission.

*Affirmed.*

The opinion states the case.

*J. T. McAllister* and *Geo. A. Revercomb* and *J. D. Hank, Jr.,* for the plaintiffs in error.

*J. M. Perry, H. T. Wickham* and *Henry Taylor, Jr.,* for the defendants in error.

West, J., delivered the opinion of the court.

The board of supervisors of Alleghany county instituted this proceeding before the State Corporation Commission in February 1918, for the purpose of having the Commission ascertain and fix the true valuation of eighteen miles of the main line of railroad of the Chesapeake and Ohio Railway Company, lying in Alleghany county between Covington and the West Virginia line, in order that the board might lay thereupon the levies of Alleghany county, alleging that the taxing authorities erroneously omitted to assess this mileage for the years 1879-1901, inclusive. The board of supervisors has appealed from a judgment denying the prayer of its petition and dismissing the proceeding.

The facts, as stated in the appellant's petition and the brief of appellee's counsel, are substantially these:

On the 15th day of February, 1853, an act was passed by the legislature of Virginia (Acts 1852-53, c. 67), authorizing the Board of Public Works of the State to construct a railroad from Covington to the Ohio river, on State account, under which act the construction was commenced and prosecuted by means of State appropriations, made from time to time, until the work was arrested by the civil war.

In 1866 an act was passed by the General Assembly of Virginia, incorporating the Covington and Ohio Railroad Company for the purpose of completing and operating a railroad from some point in Covington, Alleghany county, Virginia, to some point on the Ohio river, connecting at Covington with the Virginia Central Railroad. Acts of 1865-66, page 317.

Section 7 of the act provides that "no taxation upon the property of said company shall be imposed by the State until the profits of the company shall amount to ten per centum of its capital."

The State having been divided, the legislature of West Virginia, in 1866 (Acts 1866, c. 131), passed a similar act to incorporate the Covington and Ohio Railway Company.

In 1867 an act was passed by the legislature of each State providing for the consolidation of the Virginia Central Railroad Company and the Covington and Ohio Railroad Company, under the name of Chesapeake and Ohio Railroad Company. Acts of Assembly of Virginia, 1866-67, p. 705 (Acts 1867 W. Va. c. 93).

The act last mentioned granted a charter to the Chesapeake and Ohio Railroad Company and authorized it to take over the Virginia Central Railroad Company, and also to complete and make a part of its system the proposed Covington and Ohio Railroad.

[1] The second paragraph of the act contains the following provision:

"The companies which may consolidate under the provisions of this act shall constitute one corporation, which shall be vested with all the *rights, privileges, franchises* and property which may have been vested in either company prior to the act of consolidation, and shall be known as The Chesapeake and Ohio Railroad Company."

It is obvious that this act expressly continued the exemption from taxation of that portion of the property of the new corporation acquired from the Covington and Ohio Railroad Company.

Later it was attempted to tax all the property of the Chesapeake and Ohio *Railroad* Company and this court and the Supreme Court of the United States held that the property acquired by the new corporation from the Covington and Ohio Railroad Company was not taxable; but that all the other property of the new company was taxable. *Comth.* v. *C. & O. Railroad Co.*, 27 Gratt. (68 Va.) 344; *Chesapeake & O. R. Co.* v. *Virginia,* 94 U. S. 718, 24 L. Ed. 310.

In 1878 certain mortgages of the Chesapeake and Ohio Railroad Company were foreclosed, its property sold and purchased by the Chesapeake and Ohio *Railway* Company, the appellee here.

The act approved January 25, 1879 (Acts 1878-79, c. 49), allowing the Chesapeake and Ohio *Railway* Company to increase its capital stock declared that this company "has succeeded to the franchises, rights and privileges of the Chesapeake and Ohio Railroad Company."

The general statute of Virginia (Acts 1840-41; Code 1887, sec. 1234), provided that the purchaser at such sales should "succeed to all such franchises, rights and

privileges" as would have been had by the Chesapeake and Ohio Railroad Company but for such foreclosure.

The West Virginia Constitution of 1863, (Art. II, sec. 5) as well as the Code of West Virginia, 1868, chapter 53, section 8, reserved to the legislature the right to alter or repeal at its pleasure the charter of any company granted under general laws, and by an act approved January 31, 1879 (Acts 1879, c. 5), its legislature amended the act incorporating the Covington and Ohio Railroad Company so as to omit therefrom the clause containing the right of exemption from taxation, and by an act of March 7, 1879 (Acts 1879, c. 73), subjected the railroad company's property to taxation.

The Supreme Court of the United States in the case of *Chesapeake & Ohio Railroad Co.* v. *Miller,* 114 U. S. 176, 5 Sup. Ct. 813, 29 L. Ed. 121, decided in 1885, held that the railway company was incorporated under general law and that "the exemption thus conferred did not take effect as a contract, protected from repeal by the Constitution of the United States."

The legislature of Virginia took no similar action and neither the Board of Public Works, nor the defendant company, had any reason to believe that the same court would hold that the portion of the road between Covington and the West Virginia line was not exempt from taxation.

In *Lake Drummond Canal, etc., Co.* v. *Commonwealth,* 103 Va. 337, 49 S. E. 506, 68 L. R. A. 92, the court held that an exemption from taxation to the Dismal Swamp Company did not pass to the purchaser at a foreclosure sale under the words, "franchise, rights and privileges," of section 1234 of the Code of 1837 (Acts 1840-41, *supra*). This decision was handed down in 1905, too late to guide the Board of Public Works in the discharge of its duties during the years 1879 to 1901, inclusive.

Under the act approved March 27, 1876 (Acts 1875-76, c. 162), in force in 1879, each railroad company in the State was required to make an annual report to the Auditor of Public Accounts, with a detailed description and estimate of the value of its railway, depots, etc.; whose duty it was to bring such report before the Board of Public Works as a basis for its assessment for taxation. Another report required to be made to the Auditor of Public Accounts for the purpose of assessing railroads with their pro rata share of the expense of maintaining the office of Railroad Commissioner, called for the total mileage in the State, and in this report the company stated its total mileage, without deduction for the eighteen miles claimed to be exempt.

After 1881 (Acts 1881-2, p. 497) the railroads were required by statute to report the mileage subject to taxation in each county, and the railway company reported 19.48 miles in Alleghany county, when its total mileage in that county was 37.49 miles, the difference of eighteen miles being a part of the old Covington and Ohio Railroad west of Covington.

The last mentioned report to the Auditor of Public Accounts who, as stated, was a member of the Board of Public Works, called for the total mileage in the State, and the railway company reported it to be 225½ miles, without deduction for that portion claimed to be exempt.

The Chesapeake and Ohio *Railway* Company in accordance with the decision in *C. & O. R. Co.* v. *Comth.*, *supra*, the general statute and the act of 1879, *supra*, continued to make such reports as the *railroad* company had made, calling attention in the report, with few exceptions, to the fact that the 207½ miles it was reporting included only the mileage "subject to taxation." The reports for the purposes of assessment were so made

from 1878 to 1901, inclusive. The company having earned ten per centum on its capital in 1902, in 1903 it reported its full mileage at 225½ miles and its mileage in Alleghany county at 37.49 miles.

By the act of March 6, 1882 (Acts 1881-82, c. 221), the board of supervisors were authorized to order the levy on real and personal property of railroad companies, which pass through their respective counties, except such as are exempt from county or other local taxes, based upon the assessment per mile made by the State for its purposes and furnished by the Auditor of Public Accounts to said boards.

The board of supervisors of Alleghany county from 1880 to 1902 levied county and district taxes on that part of the road in their county which was formerly known as the Virginia Central Railroad.

The only assignment of error is the action of the Commission in determining that the railway company is protected from the assessment of the property in question by paragraph 7, of section 508, of the Code of 1887, as amended by the act of 1916 (Acts 1916, c. 491).

[2, 3] The railway company challenges the jurisdiction of the Commission, and the right of the board of supervisors of Alleghany county to maintain the proceeding, pleads the statute of limitations and laches, and asserts that the several valuations of the railroad company's properties by the Board of Public Works were final and conclusive.

As to the jurisdiction of the Commission there can be no doubt. Under section 156 (a) of the Constitution of Virginia, the State Corporation Commission succeeded to all powers and duties of the Railroad Commissioner and the Board of Public Works. Section 508, Code of 1887, as amended by the act of 1916, pro-

vides in terms that "if the commissioner of the revenue, examiner of records, or other assessing officer, commission or board designated by law to assess persons, property (real, personal and mixed)   *   *   *   ascertain that any person or real or personal property   *   *   * has not been assessed for taxation for any year by the State, county, district, city or town, or that the same has been assessed at less than the law required, for any year, or that the taxes, levies, *et cetera*, thereon, for any cause have not been realized, it shall be the duty of the commissioner of the revenue, examiner of records, or other assessing officer to list the same and assess persons, property (real, personal and mixed), and levies at the rate prescribed for that year.

It appearing that the eighteen miles of railroad in question was not assessed and taxed for the years in controversy, it follows that it was the duty of the Commission to value the same and assess the omitted State taxes thereon, unless there be found in the statutes some provision which would operate to exempt the company from such taxation.

[4] The board of supervisors of Alleghany county had nothing to do with the assessment of this property for taxation, their only duty being to lay the county and district levies thereon upon the basis of the assessment valuations duly made by the Commission.   The board has been guilty of no laches which can defeat its right to tax the property in question, nor does the statute of limitations run against it.

[5] Paragraph 7 of section 508 of the Code, as amended in 1916 (2336 Code of 1919), reads as follows: "In the case of omitted taxes, wherever the taxpayer has made full disclosure of his taxable property (real estate, tangible or intangible personal property, money and income), and in cases of tangible and intangible personal property, money and income, has enumerated on his

returns the items thereof, and there has been an assessment made in good faith by the tax officer, although made under misapprehension of the laws, such assessment as to the valuation of such property shall be final; but in cases in which there has not been a full disclosure and enumeration on his tangible and intangible personal property; income and money, whether intentional or otherwise, such assessment shall not be considered final, but in contested cases the burden shall be upon the taxpayer to show that he has made a full disclosure."

Before the exemption provided for in paragraph 7 can become operative, it is necessary, first, that the taxpayer make a full disclosure of his taxable property to the official charged with the duty of assessing the same, second, that there be an assessment in good faith by the assessing officer, and, third, an innocent error on the part of the assessing authority as a result of a misapprehension of the law.

[6] The Commonwealth admits that if the railway company made a full disclosure of its taxable property, including the eighteen miles in question, and the Board of Public Works made the assessment in good faith and erroneously determined that the eighteen miles were not assessable, as a matter of law, the valuation they placed upon the entire mileage is final.

[7] It is manifest that the object of the legislature in requiring the taxpayer to make a "full disclosure" was to make certain that the assessing officers received information as to all taxable property owned by him. When the taxpayer's report of his taxable property, though not technically full and complete, gives information which, when added to the information the assessing authorities received from other sources, puts them in possession of the same facts they would have been possessed of if the taxpayer had made a report in strict

compliance with the statute, the Commonwealth is not prejudiced by his failure to do more, and the taxpayer is entitled to the benefit of the statute as to a full disclosure of his property.

[8] The definition of the word "disclosure," according to 18 Corpus Juris 1050, is "to reveal to knowledge; to impart what is secret; to free from secrecy or ignorance; to tell that which has been left concealed."

It follows that there can be no "disclosure" to the assessing authorities of facts already within their knowledge.

[9] It appears without contradiction that the railway company reported 207½ miles as the length of the road in Virginia "subject to taxation." The words "subject to taxation" gave the Board of Public Works notice that it owned additional mileage in Virginia. The Auditor of Public Accounts, who was a member of the Board of Public Works, received from the company annually a report of the gross income of the company in which the entire mileage in Virginia was stated to be 225½ miles. It is unbelievable that in the discharge of his duties as a member of the Board of Public Works the honorable and trusted officer who filled the important post of Auditor of Public Accounts did not bring to the attention of the other members of the board all the information available to him. It will be remembered that the board was not bound by the report of the taxpayer, but was required after receiving its report to assess the railroad property, "upon the best and most reliable information that can be procured, and to this end shall be authorized and empowered to send for persons and papers, should it be deemed necessary."

The Board of Public Works had actual knowledge of the existence of the eighteen miles of road in question. The construction of the road from Covington to the

Ohio river was first undertaken as a State enterprise by this board, and its members were necessarily familiar with the tax exemption clause of the charter under which they were acting. The contract effecting the consolidation between the Virginia Central and the Covington and Ohio Railroad was required to be filed with the Board of Public Works. As assessor of railroad property in the State, the board was, without doubt, familiar with the decision of the Supreme Court in *Commonwealth* v. *Chesapeake and Ohio Railroad Co.*, *supra*, adjudging that the mileage in question was exempt from taxation.

It sufficiently appears from a careful consideration of the record that the Board of Public Works, as well as the board of supervisors, knew the railway company owned the eighteen miles in question, and that the Board of Public Works assessed the entire road in Virginia, in good faith, honestly believing the eighteen miles in question were exempt from taxation, and, under a misapprehension of the law, placed no valuation thereon.

The *Union Tanning Company Case* (123 Va. 610, 96 S. E. 780), relied on by appellant, is not controlling in the instant case. That case involved the assessment of personal property. The taxpayer failed to enumerate the items on his returns as required by the statute and the assessing officer had no other knowledge of what property it owned.

We find no error in the judgment complained of.

*Affirmed.*